# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| 7 IL PROPERTIES, LLC, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 2:21-cv-226-RWS |
| | ) |
| GARY KNIGHT, | ) |
| Defendant. | ) |

## GARY KNIGHT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

Gary Knight hereby files his Motion for Summary Judgment and Brief in Support thereof, as follows:

## PRELIMINARY STATEMENT

Gary Knight and 7 IL Properties, LLC entered into a couple of poorly crafted purchase and sales agreements for two properties in Fannin County. One of the properties, 92 Fish Trap, was complicated by an encroachment which was discovered by a third party to whom Mr. Knight was attempting to sell an adjacent property. Both of the properties required complicated easements, based on indefinitely worded amendments, which 7 IL's attorney failed to find the time to complete.

As a result, negotiations continued throughout the process and up to the date of closing. Proposed easements were never actually drafted by 7 IL's attorney.

When no final agreement could be reached, the properties failed to close and 7 IL filed suit.

7 IL's suit is flawed on all claims. 7 IL's claim for specific performance is barred by Georgia Law on the grounds that a monetary remedy (in the form of its own breach of contract claim) exists. Its claim for breach of warranty of title must be dismissed on the simple grounds that no title was ever conveyed to be breached. 7 IL's claim for negligent misrepresentation fails per Georgia Law because 7 IL failed to perform the due diligence that non-party Gary Branch took to discover the encroachment on the abutting property. Finally, the breach of contract claim must be dismissed because the essential element of the contracts (the preparation of the easements) was not performed by 7 IL's own attorney and because the corresponding Easement Amendments were so vague that there was a lack of meeting of the minds between the Parties, rendering both contracts unenforceable.

Mr. Knight is entitled to summary judgment on all claims and this matter should be dismissed with prejudice.

**FACTUAL BACKGROUND**

While there are overlapping issues, especially with regard to the easements, Mr. Knight will address the deals separately to limit confusion to the extent possible.

### A. 253 River Heights Road Deal.

On March 14, 2021, Mr. Knight and John Thatcher (as managing member of 7 IL Properties, LLC) executed a purchase and sale agreement under which 7 IL would purchase that property identified as 253 River Heights Road, Blue Ridge, Fannin County, Georgia 30513 (hereafter, "253 River") from Mr. Knight pursuant to the terms of said agreement (hereafter, the "253 River PSA"). Statement of Undisputed Facts, ¶ 1. Attorney Terry L. Wilson was the closing attorney for the 253 River PSA and the 92 Fish Trap PSA (addressed *infra*). SOUF ¶ 2. In part because both deals were cash deals, Mr. Wilson represented the Buyer, 7 IL, in both deals. SOUF ¶ 3. As a result, Mr. Wilson was the attorney for 7 IL.

The closing date for the 253 River PSA was June 1, 2021. SOUF ¶ 4.

253 River abuts the Toccoa River. SOUF ¶ 5. The road access to 253 River and the Toccoa River access to 253 River are separated by the Blue Ridge Scenic Railway (hereafter, the "Railroad"). SOUF ¶ 6. 253 River does not have its own access to cross the Railroad. SOUF ¶ 7.

The "home" on 253 River is across the Railroad from the Toccoa River. SOUF ¶ 8. Without access to cross the Railroad, inhabitants and/or guests in the home on 253 River would not be able to access the Toccoa River. SOUF ¶ 9.

253 River may be seen on the plat within the 253 River PSA as Lot 15. SOUF ¶ 10. Mr. Knight also owns Lot 13 on this plat. Through Lot 13, Mr. Knight owns access to cross the Railroad to access the Toccoa River. SOUF ¶ 12.

For this reason, 7 IL negotiated an easement in concept, but not in detail, with Mr. Knight to allow the inhabitants and/or guests of 253 River (Lot 15) to utilize the Railroad access on Lot 13. SOUF ¶ 13. Without such an easement, guests of 7 IL at 253 River would have been unable to cross the Railroad to access the Toccoa River. SOUF ¶ 14. 7 IL deemed this easement necessary to purchase 253 River. SOUF ¶ 15.

As a result, Amendment to Agreement 3 (previously, erroneously marked as 2 in the 253 River PSA) was drafted (hereafter, "253 River Amendment 3"). SOUF ¶ 15. 253 River Amendment 3 was executed by the Parties on April 5, 2021. SOUF ¶ 17. 253 River Amendment 3 states in part that (a) "Buyer to maintain $5 Million liability insurance for railroad crossing in order to use easements," and (b) "community well agreement / easements to be written by Licensed Georgia attorney at or prior to closing." SOUF ¶ 18.

Mr. Wilson was aware of the easement issues on the 253 River and 92 Fish Trap properties (including well water, river access and footpaths) from a prior closing on a property previously owned by Mr. Knight which had been sold to a fellow named Thor James. SOUF ¶ 19. Mr. Thatcher stated that he did not want

any properties without proper easements. SOUF ¶ 20. As of May 28, 2021, (as stated in a text message to Dee McBee, 7 IL's realtor), Mr. Thatcher had not yet seen the easements and wanted to get the wording correct. SOUF ¶ 21.

**B.     92 Fish Trap Road Deal.**

On April 2, 2021, Gary Knight and John Thatcher (as managing member of 7 IL Properties, LLC) executed a purchase and sale agreement under which 7 IL Properties, LLC would purchase that property identified as 92 Fish Trap Road Road, Blue Ridge, Fannin County, Georgia 30513 (hereafter, "92 Fish Trap") from Mr. Knight pursuant to the terms of said agreement (hereafter, the "92 Fish Trap PSA"). SOUF ¶ 22. On April 5, 2021, the Parties executed Amendment 1 to the 92 Fish Trap PSA, which required that "river easements and community well (water) maintenance agreements … be drafted by [a] Georgia licensed attorney prior to or at closing." SOUF ¶ 23. No further details were provided.

7 IL wanted to have the easements on the 92 Fish Trap property drafted by a licensed attorney, and wanted written easements for well water and for access to the Toccoa River. SOUF ¶ 24. According to Mr. Thatcher, the Parties had agreed to include a footpath easement in the 92 Fish Trap PSA. SOUF ¶ 25. The 92 Fish Trap PSA does not specifically discuss any footpath easement because the amendment is incredibly indefinite. SOUF ¶ 26.

The 92 Fish Trap PSA contemplated the purchase of Lot 10 on the plat enclosed within. SOUF ¶ 27. The plat within the 92 Fish Trap PSA was not created by Mr. Knight and preexisted Mr. Knight's ownership of 92 Fish Trap. SOUF ¶ 28.

7 IL has never seen a draft version of the easements required by Amendment 1 to the 92 Fish Trap PSA. SOUF ¶ 29. This is despite the fact that Mr. Thatcher emailed Mr. Knight on April 2, 2021 advising Mr. Knight that the easements were "too vague," that he "thought an attorney was going to write" the easements, that an easement "map would help in the future," that he did not want to insure the easement, and that a defined easement needed to be drawn regarding well water. SOUF ¶ 30. This is also despite the fact that 7 IL and Mr. Thatcher believed that these easements needed to be drafted before closing. SOUF ¶ 31. This position, of course, made sense.

Unfortunately, the Amendment to the 92 Fish Trap PSA was extremely vague to the point of needing clarification as to what was agreed, and it was never clarified before closing. SOUF ¶ 32. Mr. Thatcher has no reason to believe that Mr. Knight knew there was an error with the plat surrounding 92 Fish Trap prior to April 2, 2021. SOUF ¶ 33.

Neither 7 IL, nor Mr. Thatcher ordered a survey of either property. SOUF ¶ 34.

While 7 IL was in the process of purchasing 92 Fish Trap Road from Mr. Knight, a fellow named Gary Branch was in the process of purchasing the neighboring property, 100 Fish Trap Road from Mr. Knight. SOUF ¶ 35. 100 Fish Trap Road is marked on the plat as Lot 9. SOUF ¶ 36.

On April 18, 2021, at Mr. Branch's request, Mr. Knight and Mr. Branch entered an Amendment 3 to their own agreement for the purchase of 100 Fish Trap Road requiring a survey of Lot 9 to be completed at Mr. Branch's expense. SOUF ¶ 37. Mr. Branch was invoiced for and ultimately paid for the survey. SOUF ¶ 38.

The results of the survey demonstrated that there was an encroachment, which was later marked as Lot 10A on the survey (hereafter, the "Encroachment"). SOUF ¶ 39. On May 31, 2021, the preliminary survey, ordered by Mr. Branch, was completed by the surveyors. SOUF ¶ 40. On June 1, 2021, the survey was recorded. SOUF ¶ 41.

The Encroachment was a property line cut wherein 92 Fish Trap Road sliced into the driveway for 100 Fish Trap Road and wherein part of a retaining wall also stretched over the boundary line per the original plat. SOUF ¶ 42.

**C.      Attempted Closing.**

Mr. Wilson was the licensed Georgia attorney who was drafting the easements for both properties. SOUF ¶ 43. Mr. Wilson was the only licensed

Georgia attorney involved in the 253 River PSA and 92 Fish Trap PSA. SOUF ¶ 44. As noted above, Mr. Wilson represented 7 IL.

On April 13, 2021, Mr. Knight emailed Mr. Wilson's assistant Kristin Chancey regarding the negotiated easements for both properties. SOUF ¶ 45. On May 26, 2021, Mr. Knight's realtor, Brian White, emailed Mr. Wilson stating that he had "just got off the phone with Gary Knight and he asked if [Mr. White] would check in on the easement that [Mr. Wilson was] drafting for 92 and 100 Fish Trap," and further that Mr. Knight "mentioned he [wasn't] comfortable reviewing day of closing and would like to have time to review beforehand." SOUF ¶ 46.

Later on May 26, 2021, Mr. Wilson responded that he spoke with Mr. Knight at length and planned to get the easements to Mr. Knight by May 27, 2021. SOUF ¶ 47. On May 27, 2021, in response to a request for the draft easements by Mr. Thatcher, Mr. Wilson sent Mr. Thatcher draft easements for the Thor James property (which was a prior project of Mr. Wilson). SOUF ¶ 48.

According to Mr. Thatcher, Mr. Thatcher did not see the draft easements until May 31 or June 1, 2021. SOUF ¶ 49. At 6:54pm on June 1, 2021, Mr. White emailed Mr. Wilson asking for draft easements which had not yet been completed. SOUF ¶ 50. At 7:52am on June 2, 2021, Mr. Wilson responded to Mr. Knight with easements for Mr. James's property that was not part of either the 253 River PSA or the 92 Fish Trap PSA. SOUF ¶ 51.

8

The draft easements that Mr. Wilson sent to Mr. Knight and Mr. White on June 2, 2021 (the day after scheduled closing) were incomplete and on their face required the signature of Mr. James who was not expected to be at closing on June 1, 2021. SOUF ¶ 52. Mr. Wilson had neither drafted, nor presented to Mr. Knight any easement for the 253 River PSA or 92 Fish Trap closing on or before June 1, 2021. SOUF ¶ 53. Mr. Wilson had provided zero easements by June 1, 2021. SOUF ¶ 54. Mr. Wilson has still never produced any appropriate easement drafts.

According to Mr. Wilson, at the closing table on June 1, 2021, in response to the Encroachment, Mr. Thatcher was negotiating saying that he would close that day if the purchase price for 92 Fish Trap was reduced by $50,000.00. SOUF ¶ 55. According to Mr. Thatcher, the price reduction was to be $25,000.00. SOUF ¶ 56. Mr. Thatcher did not state that he was willing to close the deals as agreed. SOUF ¶ 57. Even as of closing, this deal was still being negotiated.

## **DISCUSSION**

"Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996). If the nonmoving party has failed to provide evidence that a reasonable factfinder may find in its favor, no genuine issue of material fact

exists. *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## A. 7 IL Cannot Support A Claim For Specific Performance Because Monetary Damages Are Available.

7 IL's first count, that of specific performance, is fatally flawed by the existence and availability of its fourth count, breach of contract. The very act of bringing a claim for breach of contract is a concession that monetary damages are available for 7 IL should it prevail. Under Georgia law, this inherently quashes specific performance, even in a real estate contract dispute.

"Specific performance is an extraordinary, equitable remedy, which will be granted **only** if the complainant does not have an adequate remedy at law." *Sexton v. Sewell*, 351 Ga. App. 273, 275 (830 S.E.2d 605) (2019) (emphasis supplied) (expressly rejecting the premise that real estate purchases are always subject to specific performance on the grounds that every property is unique, and instead holding that "a plaintiff may **seek** specific performance if the sales contract meets certain requirements" at 280, emphasis in original). The *Sexton* Court went on to find that because the aggrieved party "could have obtained an award of monetary damages that adequately compensated them for the" alleged breach, specific performance was not an available remedy. *Id.*, at 281.

10

As with *Sexton*, 7 IL has an available breach of contract claim eliminating its specific performance claim. On this basis alone, specific performance must be dismissed.

Nonetheless, 7 IL's claim would fail even if no monetary remedy existed because the subject matter of the purchase agreements remains vague. Generally, specific performance is an available remedy for the purchase of land where the purchase agreement is "specific as to all essential elements: (1) subject matter; (2) purpose; (3) parties; (4) consideration; and (5) time and place of performance." *Hutson v. Young*, 255 Ga. App. 169, 171 (564 S.2d 780) (2002) (holding further that where the terms are uncertain as to price, "specific performance is not an available equitable remedy.")

Certainly, with regard to 92 Fish Trap, the encroachment issue, which was unknown to Mr. Knight (who reasonably relied on the plats produced to him at the time of his purchase), bears a major discrepancy as to the subject matter of the property. Both Mr. Knight and 7 IL believed that the 92 Fish Trap PSA involved the purchase of a property which was not actually the property to be bought and sold.

Still, both properties are also burdened by the easement issues which are the true crux of the dispute. Clearly drawn easements were critical to both Mr. Knight and 7 IL through Mr. Thatcher. Neither Party was willing to end up in an endless

easement litigation over well water rights, footpath rights or railroad crossing rights for years after closing. Both Mr. Knight and Mr. Thatcher complained about the failed specificity on the easements after the Amendments and through the closing date.

Because Mr. Wilson, the attorney for 7 IL who had agreed to take on the task of drafting the easements, had failed to provide specific easements to anyone (including his own client) at any stage, the Parties were clueless as to what exactly was being bought and sold. The subject matter of both purchase and sale agreements remains unclear, even today.

Even if this Court were to ignore *Sexton*, the Court would be forced to ask what specifically should be specifically performed. This Court would have to decide what terms of what easement for which property were agreed to by the Parties. Given the fact that Mr. Thatcher has admitted that there was no clarification on this point **after** the last amendments to purchase and sale agreements, there is nothing to specifically perform. Indeed, this admission renders it impossible for a jury to find that there was a clear "subject matter" on the table to be specifically performed. No meeting of the minds existed.

7 IL and Mr. Thatcher never knew what they were trying to buy. They did not know the subject matter of their own purchase and sale agreements, and it was their own attorney's fault. Specific performance must be dismissed as a matter of

law, and because there is no genuine issue of material fact which may support 7 IL's claims.

## B. 7 IL Cannot Support A Claim For Breach Of Warranty Of Title Because Title Was Never Conveyed.

Georgia Law does not recognize a tort for anticipated breach of warranty of title, which is effectively what 7 IL is attempting to present. It is undisputed that the Parties never closed the 92 Fish Trap PSA (which is the only property related to this claim). In the absence of closing, Mr. Knight never provided a deed or a title to 92 Fish Trap to 7 IL. As such, he was incapable of breaching the anticipated deed or title.

In a somewhat similar case, *Weiss v. Old Republic Nat. Title Ins. Co.*, 262 Ga. App. 120 (584 S.E.2d 710) (2003), the Georgia Court of Appeals addressed the issue of breach of warranty of title wherein an encumbrance had clouded title to land on a series of plots owned and sold by one party. The key difference between *Weiss* and this case is that the 92 Fish Trap PSA never closed.

As the *Weiss* Court points out the "warranty of title" is "contained in a warranty deed," and is a "covenant that runs with the land." *Weiss*, at 123. A title is not conveyed at the time that a purchase and sale agreement is crafted or signed. The *Weiss* Court clarified this obvious point when stating that "Weiss conveyed the

property to Hallman … by warranty deed." *Id*. "In the warranty deed, Weiss promised to 'forever defend the right and title' to the property." *Id*.

Without the execution of a deed, there is no transfer of title. Without a transfer of title, there is no title to breach. Without a breached title, there is no claim for breach of title. 7 IL's second claim for breach of warranty of title must be dismissed as a matter of law because there is no genuine issue of fact as to whether a title existed in the first place.

**C.   7 IL Cannot Support A Claim For Negligent Misrepresentation Because It Failed To Perform Due Diligence That Would Have Revealed The Truth Of The Matter.**

7 IL's claim for negligent misrepresentation deals exclusively with the 92 Fish Trap PSA and pointedly just the issue of the encroachment. Ironically, the manner by which the encroachment was discovered forms the basis for the dismissal of 7 IL's claim.

Shortly after the 92 Fish Trap PSA was executed, Mr. Branch decided to pull a survey as due diligence for his purchase of the neighboring property, 100 Fish Trap. The survey revealed the discrepancy in the older plats which were incorporated into the 92 Fish Trap PSA. 7 IL had the opportunity to require a survey as a condition of the 92 Fish Trap PSA. It failed to do so.

To prove negligent misrepresentation, a party must prove "(1) the defendant's negligent supply of false information to foreseeable persons … (2) such persons' reasonable reliance upon that false information; and (3) economic injury" therefrom. *Trico Environmental Srvcs., Inc. v. Knight Petroleum Co.*, 357 Ga. App. 826, 831 (849 S.E.2d 538) (2020). In *Trico*, the Georgia Court of Appeals upheld a grant of summary judgment in favor of the defendant where the plaintiff could have pulled records from city hall as due diligence to avoid the allegedly false information.

Citing *Hanlon v. Thornton*, 218 Ga. App. 500, 501-02 (462 S.E.2d 154) (1995) and *Futch v. Lowndes County*, 297 Ga. App. 308, 318 (4) (676 S.E.2d 892) (2009), the *Trico* Court held that negligent misrepresentation is not an available remedy in real estate transactions where due diligence could have revealed the truth of the matter to avoid damage. *Trico*, at 832.

As with *Trico*, had 7 IL pulled a survey of 92 Fish Trap, the false information would have been discovered. 7 IL's premise that Mr. Knight failed to advise 7 IL of the encroachment at the time of the execution of the 92 Fish Trap PSA or its last amendment is not based on intent. Mr. Thatcher has admitted that he has no evidence that Mr. Knight was aware of the encroachment at that time.

7 IL's argument is instead essentially that Mr. Knight should have ordered a survey of 92 Fish Trap at some point. This, of course, is not consistent with

15

Georgia Law as per *Trico*, but also a bit disingenuous. 7 IL itself could have ordered a survey, eliminating this issue, but failed to do so. Obviously, Mr. Branch had no issue doing so. As per *Trico*, 7 IL's claim for negligent misrepresentation must be dismissed as a matter of law.

**D.     7 IL Cannot Support A Claim For Breach Of Contract Because The PSAs Were Both Fatally Vague As To The Required Easements And Because 7 IL's Failure To Draft Easements Renders 7 IL The Cause Of The Breach.**

7 IL's fourth claim, breach of contract, fails both because the Easement Amendments to the two PSAs were incredibly vague, rendering the contracts unenforceable; and because Mr. Wilson, the attorney for 7 IL, identified as the Georgia licensed attorney in the only clear section of either Easement Amendment, failed to draft any easements, eliminating 7 IL's right to complain.

Georgia Law requires that breach of contract claims stemming from real property transactions demonstrate a breach, with resulting damages, "to the party who has the right to complain about the contract being broken." *Atlanta Partners Realty, LLC v. Wohlgemuth*, 365 Ga. App. 386, 396 (878 S.E.2d 615) (2022). Moreover, the first act of a construing court, is to "look to the plain meaning of the words of the contract." *Id.*

*Wohlgemuth* is instructive here for two reasons: (a) 7 IL, which failed to prepare the easements via their attorney Mr. Wilson, is not the party who has the

16

right to complain about the contract being broken, and (b) the plain meaning of the words of the contracts are vague. Where a real estate contract is to be taken as a "whole or none," unenforceable portions render the entire contract unenforceable. *Farmer v. Argenta*, 174 Ga. App. 682, 683 (331 S.E.2d 60) (1985). The *Farmer* Court also found that an agreement, "to be enforceable, must be sufficiently definite as to both time and subject matter." *Id. See also Parks v. Thompson Bldrs., Inc.*, 296 Ga. App. 704 (675 S.E.2d 583) (2009) (concluding that a real estate contract lacking a specific mortgage rate was sufficiently vague to render the entire contract unenforceable).

In this case, the only thing that was clear with regard to the easements, which both Parties agreed were critical aspects of the PSAs, was that they were to be drafted by a Georgia licensed attorney at or before closing. (Mr. Wilson, representing 7 IL, was assigned and accepted this task). The 92 Fish Trap Amendment said nothing more of substance than that. The 253 River Amendment added some attempt at vague detail, but nothing concrete, such as the hours of the footpath easement or the payor for the well water electric bill that Mr. Thatcher complained of to his attorney Mr. Wilson.

Despite repeated demands for some draft of the easements, which were to be complicated, Mr. Wilson never produced a single draft of the easements even as of today. The best Mr. Wilson managed was to provide some templates used before

17

with other properties that bore signature lines for Thor James who had nothing to do with either the 92 Fish Trap PSA or the 253 River PSA.

In doing so, Mr. Wilson prolonged the negotiations over the proposed easements beyond the June 1, 2021 closing date. This had the net effect of both a default on the part of 7 IL through the failings of Mr. Wilson to draft appropriate easements as required by both PSA Amendments, and to render both contracts sufficiently vague as to the actual terms of what was being purchased without defined easement terms.

The plain language of the 253 River Amendment 3 states in part that (a) "Buyer to maintain $5 Million liability insurance for railroad crossing in order to use easements," and (b) "community well agreement / easements to be written by Licensed Georgia attorney at or prior to closing." That tells the Court (and the Parties) almost nothing. Worse, Amendment 1 to the 92 Fish Trap PSA only required that "river easements and community well (water) maintenance agreements … be drafted by [a] Georgia licensed attorney prior to or at closing." No terms were included at all.

"The defense of vagueness and indefiniteness is … a question of interpretation and ascertaining the intent of the parties." *Denton v. Hogge*, 208 Ga. App. 734 (431 S.E.2d 728) (1993) (rendering a real estate contract unenforceable due to indefinite provisions in its financing provision). This Court cannot

reasonably determine the intent of the Parties as to whether the proposed footpath easements were to be 9:00am to 5:00pm, or 6:00am to 10:00pm, or perpetual. This Court cannot conclude from the Amendments whether the Parties intended for the well water easements were to lay the electric bill for the well water at the feet of 7 IL as the buyer or Mr. Knight as the owner of the property conveying the easements. There is likewise no measure of specificity to instruct this Court as to the intent of the Parties for the terms of the proposed railroad crossing easement, that Mr. Thatcher stated was essential for the purchase of 253 River.

Without any sort of clarity as to these essential easements, the PSAs were sufficiently vague as to be unenforceable. *See Hitt v. Lord*, 194 Ga. App. 655 (391 S.E.2d 681) (1990) (holding a real estate contract unenforceable due to indefinite terms as to which party was responsible for having a property rezoned). This problem could have easily been resolved if Mr. Wilson had drafted proposed and detailed easements in April or early May of 2021 to allow negotiations to proceed. He did not. As a result, negotiations never concluded, and there was never a meeting of the minds as to what exactly was being bought and sold. This failure, being Mr. Wilson's, was 7 IL's failure. 7 IL cannot maintain "right to complain about the contract being broken." *Wohlgemuth*, at 396.

These vague PSAs are unenforceable, and the failure to craft easement agreements was the fault of 7 IL, which cannot now complain. 7 IL's claim for

breach of contract must be dismissed as there is no genuine issue of material fact which may support it.

## CONCLUSION

Summary Judgment should be Granted in favor of Mr. Knight on all four counts of 7 IL's Amended Complaint.

This 17th day of October, 2023.

/s/ Frank G. Podesta
Frank G. Podesta
GA Bar No. 496530
fpodesta@fgplaw.com

555 Sun Valley Drive
Suite N-3
Roswell, Georgia 30076
678.677.5143 (voice)
678.222.0123 (facsimile)
*Attorneys for Gary Knight*