
## Fwd: Toccoa Heights Easements

4 messages

**John Thatcher** <7ilinvestors@gmail.com>                                    Mon, May 31, 2021 at 10:36 AM
To: Dee McBee <deemcbeerealtor@gmail.com>

I don't have the drive easement on Knightsn landing or the mutual shared cost and indication on the stair case.

---------- Forwarded message ---------
From: **Terry Wilson** <terry@wilsonhamilton.com>
Date: Thu, May 27, 2021, 10:09 AM
Subject: Toccoa Heights Easements
To: 7ilinvestors@gmail.com <7ilinvestors@gmail.com>

John:

Easements attached, along with the RR crossing agreement.

Terry

**Terry Lee Wilson**

**Attorney**

**Two offices to serve you located at:**

**316 Summit Street**

**Blue Ridge, GA 30513**

**&**

**589 Highland Crossing**
**East Ellijay, GA 30540**

**EXHIBIT**

**L**

**706-946-6808 office**
**706-946-6809 fax**

**CONFIDENTIALITY NOTICE UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW**

**(Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a))**

This e-mail and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (706)946-6808 or by electronic mail, and delete this message and all copies and backups thereof. Thank you.

---

**5 attachments**

 **image001.jpg**
6K

 **image001.jpg**
6K

📄 **Foot Path Easement 21-0510.pdf**
96K

📄 **Recorded Easement.pdf**
176K

📄 **GNRR-0184 Knight Crossing MP 386.3- .pdf**
468K

---

**Dee McBee** <deemcbeerealtor@gmail.com>
To: terry@wilsonhamilton.com

Mon, May 31, 2021 at 12:02 PM

[Quoted text hidden]

--

## DEE MCBEE

**Better Homes and Gardens Real Estate Metro Brokers**

Cell - 770-655-5266

deemcbeerealtor@gmail.com

realtorblueridge.com

mountaincabinsforsaleblueridge.com

2460 East First Street Suite 6B

Blue Ridge, GA 30513

---

**5 attachments**

 **image001.jpg**
6K

 **image001.jpg**
6K

🗎 **Foot Path Easement 21-0510.pdf**
96K

🗎 **Recorded Easement.pdf**
176K

🗎 **GNRR-0184 Knight Crossing MP 386.3- .pdf**
468K

---

**Terry Wilson** <terry@wilsonhamilton.com>
To: Dee McBee <deemcbeerealtor@gmail.com>

Mon, May 31, 2021 at 12:12 PM

I'll be back at the office in a bit. I thought I sent everything but I'll check.

Sent from my Verizon, Samsung Galaxy smartphone
[Quoted text hidden]

---

**Terry Wilson** <terry@wilsonhamilton.com>
To: Dee McBee <deemcbeerealtor@gmail.com>

Tue, Jun 1, 2021 at 6:56 AM

Good Morning Dee:

I believe the Knight's Landing easement he's referring to is the one across Lot 13 (the neighbor that is suing Knight as owner of Lot 14). That easement benefits only Lot 14, and not 15 & 16, and Gary cannot expand it to 15 & 16 by its terms.

The mutual shared cost provision is a general one, and is contained in paragraph 5 of the recorded easement previously sent, which states: Knight and James shall maintain the easement areas in good condition and repair, with the cost of said maintenance born proportionately (1/3 per lot).

There is no other separate sharing of cost provision.

I'll let y'all know about the Lots 9 & 10 survey when I hear from Sam Walker.


Terry


**From:** Dee McBee <deemcbeerealtor@gmail.com>
**Sent:** Monday, May 31, 2021 12:02 PM
**To:** Terry Wilson <terry@wilsonhamilton.com>
**Subject:** Fwd: Toccoa Heights Easements




---------- Forwarded message ---------
From: **John Thatcher** <7ilinvestors@gmail.com>
Date: Mon, May 31, 2021 at 10:36 AM
Subject: Fwd: Toccoa Heights Easements
To: Dee McBee <deemcbeerealtor@gmail.com>


I don't have the drive easement on Knightsn landing or the mutual shared cost and indication on the stair case.


---------- Forwarded message ---------
From: **Terry Wilson** <terry@wilsonhamilton.com>
Date: Thu, May 27, 2021, 10:09 AM
Subject: Toccoa Heights Easements
To: 7ilinvestors@gmail.com <7ilinvestors@gmail.com>


John:


Easements attached, along with the RR crossing agreement.


Terry


**Terry Lee Wilson**

**Attorney**

**Two offices to serve you located at:**

**316 Summit Street**

**Blue Ridge, GA 30513**

**&**

**589 Highland Crossing**
**East Ellijay, GA 30540**

**706-946-6808 office**
**706-946-6809 fax**

**CONFIDENTIALITY NOTICE UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW**

**(Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a))**

This e-mail and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (706)946-6808 or by electronic mail, and delete this message and all copies and backups thereof. Thank you.

[Quoted text hidden]

After Recording Return to:
Wilson Hamilton LLC
316 Summit Street
Blue Ridge, GA 30513
File No. 21-0510

STATE OF GEORGIA
COUNTY OF FANNIN

## Reciprocal Easement for Foot Path

This Easement (hereinafter referred to as the "Easement") is made this _____ day of June, 2021, between **Gary Knight** ("Knight") and **7 IL Properties, LLC** ("7 IL").

WHEREAS, Knight is the owner of the following described property:

> All that tract or parcel of land lying and being in the 8th District, 2nd Section, Land Lot 80, Fannin County, Georgia, being Lot 9 of Toccoa Heights, Phase 2, containing 1.44 acres, more or less, and 0.04 acre, more or less, for a total of 1.48 acres, more or less, as shown on a plat of survey by Lane S. Bishop, GRLS No. 1575, dated July 2, 2019 and recorded in Plat Hanger F196, Page 4, Fannin County Records, to which reference is hereby made for a more complete and accurate legal description.

For informational purposes only: Map Parcel No. 0050 091 A1K

WHEREAS, 7 IL is the owner of the following described property:

> All that tract or parcel of land lying and being in the 8th District, 2nd Section, Land Lot 80, Fannin County, Georgia, being Lot 10 of Toccoa Heights, containing 1.42 acres, more or less, and 0.11 acre, more or less, for a total of 1.53 acres, more or less, as shown on a plat of survey by Lane S. Bishop, GRLS No. 1575, dated July 2, 2019 and recorded in Plat Hanger F196, Page 4, Fannin County Records, to which reference is hereby made for a more complete and accurate legal description.

For informational purposes only: Map Parcel No. 0050 091 A1F

WHEREAS, there exists a foot path for pedestrian use to access the Toccoa River across Lot 10 as set forth on the above-described plat, as well as a portion of said foot path which is not shown on the above-described plat, which lies on Lot 9 and is further described below, which has been used for enjoyment by the owners, agents, invitees and guests;

WHEREAS, the parties hereto desire to continue use of said paths for owners, agents, invitees and guests as set forth herein, by placing of record this path as an easement, and the terms associated thereto.

NOW, THEREFORE, for and in consideration of the premises and in consideration of the sum of Ten ($10.00)

Dollars and other good and valuable consideration, receipt and sufficiency whereof is hereby acknowledged it is mutually agreed as follows:

1. Knight grants to 7 IL, and 7IL grants to Knight, a permanent and perpetual easement 10' in width along an existing 6' foot path, for pedestrian use only, leading from the property lines of 9 & 10 at the gravel road, and along the gravel road to the foot path, which footpath then leads to and across the Blue Ridge Scenic Railway right-of-way as set forth on the above-described plat. The easement also branches off of the path set forth on the plat onto Lot 9, at the point of the pathway nearest the property line of Lot 9, then down along an existing path to the Blue Ridge Scenic Railway right-of-way.

2. There shall also be an easement 10' in width along the property of each lying between the Blue Ridge Scenic Railway right-of-way and the Toccoa River running parallel to each, for foot-use only for the owners, agents, invitees and guests.

3. Knight, 7 IL and Brendon Sherwood, his heirs, successors and assigns, who is the owner of Lot 22 and beneficiary of an easement along the same pathway as set forth on the above-recited plat, which easement is as set forth in Limited Warranty Deed recorded in Book 1352, Page 681, aforesaid records, shall maintain the easement areas in good condition and repair, with the cost of said maintenance born proportionately (1/3 per lot).

4. Use of the easement shall be limited to between the hours of 7 am & 9 pm daily.

5. Each party shall remain responsible for the cost to repair damage to the easement area caused by their respective negligence, or the negligence of their respective agents, invitees and guests. Each party shall indemnify and hold the other harmless from any claim or loss which may result from use of the easement area while upon the property of the other.

6. The Easement shall be appurtenant to and run with the lands of both parties, and shall bind and inure to the benefit of the parties, their heirs, successors and assigns.

IN WITNESS WHEREOF the parties herein have set their hands and seals to this Easement on the date first above written.

Sworn to and subscribed
before me this ___ day
of June, 2021.

_____          _____
Witness                                                           Gary Knight


_____
Notary Public

Sworn to and subscribed                                7 IL Properties, LLC
before me this ___ day
of June, 2021.

                                                                    By: _____
                                                                          John H. Thatcher, III, Manager

_____
Witness


_____
Notary Public



Doc ID: 002614600003 Type: EASE
Recorded: 05/07/2021 at 04:00:00 PM
Fee Amt: $25.00 Page 1 of 3
Fannin Co. Clerk of Superior Court
DANA CHASTAIN Clerk of Courts

BK **1425** PG**578-580**

After Recording Return to:
Wilson Hamilton LLC
316 Summit Street
Blue Ridge, GA 30513
File No. 21-0425

STATE OF GEORGIA
COUNTY OF FANNIN

## Easement

This Easement (hereinafter referred to as the "Easement") is made this ⁷/ day of May, 2021, between **Gary Knight** ("Knight") and **Thor A. James** ("James").

WHEREAS, Knight is the owner of the following described property:

All that tract or parcel of land lying and being in the 8th District, 2nd Section, Land Lot 80, Fannin County, Georgia, being Lot 14 of Toccoa Heights, Phase 2, containing 1.05 acres, more or less, and 0.60 acre, more or less, for a total of 1.65 acres, more or less, as shown on a plat of survey by Shelly J. Bishop, GRLS No. 2536, dated May 10, 2002 and recorded in Plat Hanger C-325, Pages 3-6, Fannin County Records, to which reference is hereby made for a more complete and accurate legal description.

For informational purposes only: Map Parcel No. 0050 091 A6

WHEREAS, Knight is also the owner of the following described property:

All that tract or parcel of land lying and being in the 8th District, 2nd Section, Land Lot 80, Fannin County, Georgia, being Lot 15 of Toccoa Heights, Phase 2, containing 1.34 acres, more or less, and 0.47 acre, more or less, for a total of 1.81 acres, more or less, as shown on a plat of survey by Shelly J. Bishop, GRLS No. 2536, dated May 10, 2002 and recorded in Plat Hanger C-325, Pages 3-6, Fannin County Records, to which reference is hereby made for a more complete and accurate legal description.

For informational purposes only: Map Parcel No. 0050 91A 1JA

WHEREAS, James is the owner of the following described property:

All that tract or parcel of land lying and being in the 8th District, 2nd Section, Land Lot 80, Fannin County, Georgia, being Lot 16 of Toccoa Heights, Phase 2, containing 0.93 acre, more or less, and 0.47 acre, more or less, and a part of Lot 17, containing 0.04 acre, more or less, for a total of 1.44 acres, more or less, as shown on a plat of survey by Joel Jordan, GRLS No. 2430, dated November 15, 2005 and recorded in Plat Book E5, Page 7,

Page **1** of **3**

Fannin County Records, to which reference is hereby made for a more complete and accurate legal description.

For informational purposes only: Map Parcel No. 0050 091 A1J

WHEREAS, prior to the purchase of Lot 16 by James, Knight owned Lots 14, 15 & 16; and during said ownership, Knight established paths for pedestrian use, to access the respective parcels of each lot that lie across the existing railroad tracts, for enjoyment by the owners, agents, invitees and guests;

WHEREAS, the parties hereto desire to continue use of said paths for owners, agents, invitees and guests as set forth herein, by placing of record these several paths as easements, and the terms associated thereto.

NOW, THEREFORE, for and in consideration of the premises and in consideration of the sum of Ten ($10.00) Dollars and other good and valuable consideration, receipt and sufficiency whereof is hereby acknowledged it is mutually agreed as follows:

1. Knight grants to James a permanent and perpetual easement 20' in width along an existing graveled path leading from the top of Lot 14, down to the railroad track crossing. The easement shall then continue 10' in width, and subject to the terms of paragraph 4 below, across the railroad track crossing to the 0.60 acre parcel of Lot 14 lying on the north side of the tracks, then along a 10' path crossing Lots 14 & 15, then ending at the property of James. Said easement shall be for foot-use only for invitees and guests of James, and for ATV & foot-use for James and his agents.

2. Knight grants to James a permanent and perpetual easement along an existing walkway across Lot 15 to the railroad crossing. Said easement shall be for foot-use only for all benefitted parties.

3. Knight, and James grant to each other a permanent and perpetual easement along an existing walkway that begins near the southern property line of James, then down a set of stairs to a footpath that winds primarily across the property of James, crossing onto the property of Knight, as set forth on the above-described plat of James at Plat Book E5, Page 7. Said easement shall be for foot-use only for all benefitted parties.

4. The right to use the easement from the point it reaches the railroad crossing is subject to the terms of a Private Road Grade Crossing Agreement between Georgia Northeastern Railroad Company LLC and Cabin Rentals of Georgia, LLC, Gary Knight and Lizabeth Knight, dated September 1, 2016 ("Crossing Agreement"), a copy of which has been given to James at the time of execution of this Easement. Knight and James shall share proportionately (1/3 per lot) the cost of the provisions thereof, including but not limited to: maintaining a Comprehensive General Liability insurance in an amount not less than Five Million Dollars per occurrence; Automobile Liability insurance in an amount not less than One Million Dollars, and Statutory Worker's Compensation and Employer's Liability insurance, as per paragraph 15/1 thereof.

5. Knight and James shall maintain the easement areas in good condition and repair, with the cost of said maintenance born proportionately (1/3 per lot).

6. Each party shall remain responsible for the cost to repair damage to the easement area caused by their respective negligence, or the negligence of their respective agents, invitees and guests. Each party shall indemnify and hold the other harmless from any claim or loss which may result from use of the easement area while upon the property of the other.

7. The Easement shall be appurtenant to and run with the lands of both parties, and shall bind and inure to the benefit of the parties, their heirs, successors and assigns.

IN WITNESS WHEREOF the parties herein have set their hands and seals to this Easement on the date first above written.

Sworn to and subscribed
before me this ___ day
of May, 2021.

_____
Witness

_____
Notary Public

Sworn to and subscribed
before me this ___ day
of May, 2021.

_____
Witness

_____
Notary Public

_____
Gary Knight

_____
Thor A. James

## PRIVATE ROAD GRADE CROSSING AGREEMENT

THIS AGREEMENT (hereinafter "Agreement") made as of the ___ 1 ᶳᵗ ___ day of _SEPTEMBER_ 2016, between the **GEORGIA NORTHEASTERN RAILROAD COMPANY LLC**, a Delaware limited liability company, whose mailing address is 109 Marr Avenue, Marietta, Georgia 30060, hereinafter called "Railroad", and **CABIN RENTALS OF GEORGIA, LLC., GARY KNIGHT** and **LIZABETH KNIGHT** married individuals whose address is 86 Huntington Way, Blue Ridge, Georgia 30513, hereinafter (collectively, if more than one) called "Licensee", party of the second part.

### WITNESSETH:

Railroad currently leases from the Georgia Department of Transportation certain real property used for railroad purposes in Fannin and Gilmer counties pursuant to a Lease Agreement beginning July 17, 1998 with an initial and subsequent terms ("Lease Agreement").

Railroad, subject to the limitations herein, for and in consideration of the fee(s) to be paid by Licensee and of the covenants, terms, conditions and agreements herein to be kept and performed by Licensee, hereby grants to Licensee the exclusive right or license to construct, use and maintain a private road at grade across the track, right-of-way, and property of Railroad, between Blue Ridge and McCaysville, Georgia in Fannin County, State of Georgia, with said crossing intersecting the centerline of Railroad's main track at Milepost 386.3, and to be constructed as agreed upon by Railroad, hereinafter called "Crossing". Except for the Crossing itself, Licensee will not build a road or otherwise infringe on any part of Railroad's right-of-way.

## 1. DEFINITIONS:

1.1 The term "Licensee" herein shall include a corporation, association, partnership, governmental body or individual, as the case may be. For Articles 8, 9, 10, 11 and 14 of this Agreement, the term "Licensee" shall also include Licensee's members, spouse, family members, agents, employees, sublicensees, invitees, subsequent title owners/assigns/heirs and any other person who uses the Crossing in any way with Licensee's acquiescence or express or implied permission. All words herein referring to Licensee shall be taken to be of such number and gender as the context may require.

1.2 The term "Railroad", as used herein, shall include any other company or companies whose property at the aforesaid location may be leased or operated by the undersigned Railroad. Said term shall also include any parent, subsidiary or affiliated system companies of Railroad. The term "Railroad" shall be synonymous with and used in place of the term "Licensor" herein throughout. For Articles 8, 9, 14 of this Agreement, the term "Railroad" shall also include the servants, agents or employees of the undersigned Railroad and of said parent, subsidiary or affiliated company.

- 1 -

1.3     The term "satisfactory" or "satisfaction" as used herein, shall mean approval by Railroad or its designated representative, which said satisfaction shall not be unreasonably withheld.

1.4     The term "Crossing", as used herein, includes track crossings, approaches, roadways, drainage facilities, warning devices, signal and wire lines, gates, barricades, signs, appliances and ancillary facilities.

1.5     If this Agreement covers more than one crossing or more than one track, the terms "Crossing" and "Track", as hereinafter used, shall be construed respectively as including any one or all of said crossings or tracks, as the context may require.

1.6     "Maintenance" shall include keeping all vegetation within the area(s) identified thereon as "sight clearance area(s)" cut to a height not exceeding two feet (2') above ground level, and keeping said "sight clearance area(s)" free of parked vehicles and other obstructions.

1.7     "Installation" or "install" when used in conjunction with "Crossing" shall also mean repairing or improving a "Crossing" to standards and requirements required by applicable rules, laws and regulations and/or to the standards and requirements imposed by Railroad.

1.8     The effective date of this Agreement shall be the earlier of execution hereof by Railroad, or installation of any Crossing.

## 2.     USE, LIMITATIONS:

2.1     This exclusive license is subject to: (a) all encumbrances, licenses, conditions, covenants and easements applicable to Railroad's title to or rights in the subject property, whether now existing or hereafter granted, agreed to or entered into by the Railroad; (b) any existing public utilities and other pipe or wireline facilities located in, on, over, under or across the Crossing, and all instruments, easements, agreements and rights therefor, recorded or not; and (c) compliance by Licensee with terms and conditions herein. However, during the pendency of this Agreement, and excepting repairs or temporary construction, Railroad shall not grant any other person or entity a right that unreasonably limits the use of the Crossing by Licensee.

2.2     The Crossing shall be used solely for as a private road for the purpose of vehicular or pedestrian access to/from Licensee's adjacent land.

2.3     This Agreement is a license to Licensee and, except for Licensee's members, spouse, family members, employees, agents, guests, and/or invitees, Licensee will not allow any other person(s) to use said Crossing and at Licensee's sole cost and expense, shall erect and permanently maintain "PRIVATE CROSSING – FOR USE ONLY BY PERMISSION OF CABIN RENTALS OF GEORGIA, LLC AND OTHER AUTHORIZED PERSONNEL -- NO TRESPASSING

- 2 -

RESTRICTED USE" sign(s) or other signs indicating the private nature of the Crossing, at location(s) adjacent to said Crossing as may be designated by Railroad.

2.4 , Licensee shall not dedicate nor permit Crossing to be used for any purpose or in any manner that might be in any way make said Crossing a public crossing or subject it to any public servitude.

2.5 Subject to Section 2.1, Railroad reserves and excepts unto itself the paramount right to continue to occupy, possess and use the area of the Crossing(s) for any and all railroad purposes and to hereafter grant, agree to or enter into such other encumbrances, licenses, conditions, covenants and easements applicable to Railroad's title to or rights in the subject property respecting such parties as Railroad shall in its sole discretion deem appropriate. Railroad shall not be obligated to make cuts in its trains for the Crossing. However, during the pendency of this Agreement, and excepting repairs or temporary construction, Railroad shall not grant any other person or entity a right that unreasonably limits the use of Crossing by Licensee. Further, with the exception of Licensee as defined in this Agreement, Railroad shall not grant a license to utilize the Crossing described in this Agreement to any property owner, invitee or lessee of any real property in Toccoa Heights Subdivision without (a) any such person or entity executing an identical document such as this Agreement; (b) said person or entity tendering a pro rata share of the installation costs of the Crossing and agreeing to share in the pro rata costs of maintenance or other costs of the Crossing and (c) the Licensee provides written consent, provided such consent shall not be unreasonably withheld.

2.6 Licensee shall operate or use said Crossing in accordance with all rules and regulations of Railroad, and any public authority having jurisdiction, so as not to interfere with or endanger, in the sole judgment of Railroad, any property, traffic, operation, maintenance, employees or patrons of Railroad.

2.7 Unless expressly provided herein, no expressed or implied means of ingress and egress or way of necessity is granted by this Agreement upon, across or over remaining or adjacent lands of Railroad. Licensee, at its own expense, will secure and maintain any necessary means of ingress and egress to the Crossing across lands of others.

3. FEES:

3.1 Upon execution of this Agreement, the Licensee shall pay the Railroad an "Application and License Preparation Fee" of $2,500.00.

3.2 Upon execution of this Agreement, Licensee shall pay Railroad an annual license fee equal to Three Hundred Fifty Dollars ($350.00) for its License. Such non-refundable annual license fee(s) shall be due on each anniversary of the Effective Date of this Agreement until terminated. The license fee is for the existence of the crossing and is not intended nor implied to be a charge for the recreational use of the crossing. It is further understood that Licensee and Licensee's invitees are

- 3 -

utilizing the crossing for recreational purposes as defined by O.C.G.A. § 51-3-20 et seq without charge by the Railroad.

As set forth in Section 4 below, Licensee is not required to pay any annual maintenance fee but Licensee is required to pay the cost and expense of any maintenance required on the Crossing during the term of this Agreement.

3.3    The annual license fee shall be increased (but not decreased), every year end anniversary thereafter so long as this Agreement remains in effect to reflect any increase in the Consumer Price Index, all urban consumers, for the period in question. Licensee agrees to pay any adjustment required pursuant to the preceding sentence.

3.4    Payment by Licensee of any annual fee(s) shall not be held to create an irrevocable license for any specific period or time.

3.5    Licensee shall indemnify Railroad against and shall pay or reimburse Railroad for any additional taxes and assessments levied on account of the existence of said Crossing. However, Licensee shall have the right to appeal said taxes in the name of Railroad but at Licensee's sole expense and Licensee shall pay any taxes ultimately imposed.

## 4.    DESIGN, CONSTRUCTION, MAINTENANCE:

4.1    Licensee shall work with Railroad on design of the crossing and safety devices.

4.2    Crossing (including the necessary appurtenances, approaches, roadway, curbs, gutters, shoulders, slopes, fills and cuts and drainage thereof) shall be constructed and maintained at the sole cost and expense of Licensee. All of Licensee's members, spouses, family members and their invitees (including, but not limited to, contractors and their employees performing work on Licensee's property), using the Crossing will be required to comply with the provisions of this Private Road Grade Crossing Agreement.

4.2    All facility installation, construction and maintenance work will be performed by the Railroad's own forces or by a Railroad approved contractor, including all work on Railroad's signal and communication facilities deemed necessary by Railroad to permit Licensee's use of Crossing, must be performed by Railroad or by a contractor approved by Railroad, at the sole risk, cost and expense of Licensee,

4.3    Licensee, at its sole risk, cost and expense, in a manner and of materials satisfactory to Railroad, shall furnish all other labor and materials required to install the Crossing and do all necessary grading for the approaches.

- 4 -

4.4    Licensee, at its sole cost and expense, shall maintain all approachways, and shall keep the Crossing at all times free and clear of all spilled materials, ice, snow, mud, debris and all obstructions (including parked vehicles) to the reasonable satisfaction of Railroad.

4.5    Licensee shall perform or cause all Licensee's Crossing work under this Agreement to be accomplished in a prudent and workmanlike manner, in conformity with any applicable statutes, orders, rules, regulations and specifications of any public authority having jurisdiction over the Crossing and under conditions satisfactory to and approved by Railroad. Said construction and maintenance shall be performed at such times and in such manner as not to interfere with the movement of Railroad's trains. In the event Licensee contracts for the performance of any Crossing work, Licensee shall require its contractor(s) and/or subcontractor(s) to comply with all the terms of this Agreement, at the sole risk of Licensee.

4.6    In the event Licensee shall fail, in the judgment of Railroad, to comply with any construction or maintenance requirement of this Agreement, and after fourteen (14) days written notice of said failure, Railroad, without waiving any other provision of this Agreement, may either furnish the labor and materials required to do such work at the sole cost and expense of Licensee.

4.7    Licensee shall be solely responsible for any relocation or protective encasement of any subsurface pipe or wire lines (telephone, electrical power transmission or distribution, fiber optic, cable television, water, sewer, gas or petroleum products, et al.) and for necessary relocation of surface structures or facilities (fences, towers, poles, etc.) incident to Licensee's construction or reconstruction of the private road crossing.

## 5.    DRAINAGE:

5.1    Licensee shall furnish, install and maintain, at Licensee's sole expense and in a manner satisfactory to Railroad, not only the Crossing, but the approaches, drainage and adequate sight clearance. If necessary, Licensee shall install drainage pipe within the approachways and underneath said Crossing, on each side of said track(s) to take care of drainage from the roadbed and keep same from the track(s) and right-of-way of Railroad.

## 6.    PERMITS:

6.1    Before any work is performed hereunder, or before use by Licensee of the premises for the contracted purpose, Licensee, at its sole cost and expense, shall obtain all necessary permits or licenses from any Federal, State or local public authorities having jurisdiction over the Crossing or Railroad's property or its intended use, and shall thereafter observe and comply with the requirements of such public authorities, and all applicable laws and regulations and future modifications thereof.

6.2    Licensee shall defend, protect and hold Railroad and the Georgia Department of Transportation harmless for failure to obtain permits and licenses, any violation thereof or for costs or expenses of compliance.

- 5 -

## 7. BARRICADES, GATES:

7.1 Licensee, at its sole cost and expense, shall furnish, construct and maintain any sign(s) and/or crossing warning device(s) or provide protective services, deemed necessary by Railroad or by any public authority having jurisdiction, prior to placing Crossing in service, and as shall from time to time be deemed necessary by Railroad or by such public authority.

7.2 After fourteen (14) days written notice to Licensee of a good faith estimated cost and a list of the materials and Licensee being provided the opportunity to furnish same, Railroad, at its election, may furnish any materials and install such crossing warning devices, or provide protective services, at the sole cost and expense of Licensee. Railroad may require advance deposit of estimated cost and expense of such work and materials. Upon completion of construction, Railroad will promptly refund any portion of the deposit in excess of Railroad's costs and expenses. Should Railroad's costs and expenses exceed said deposit, Licensee shall promptly pay such excess upon receipt from Railroad of bill therefor.

## 8. OPERATIONAL SAFETY:

8.1 Licensee shall use and shall cause its agents, employees, sublicensees and invitees to use the highest degree of care in the operation and use of said Crossing so as to avoid collisions and/or interference with operations of Railroad.

8.2 Railroad shall erect at Licensee's cost, and thereafter Licensee shall maintain, reflectorized "Railroad Crossing" Crossbuck signs and reflecting triangular highway "Yield" signs on each side of the Crossing, clearly visible to vehicular traffic approaching the Crossing from either side, and advising of the number of track(s) to be crossed, and Licensee shall be solely responsible to periodically inspect such signs to insure that same are in place and visible.

8.3 In the event that Railroad or any governmental authority requires flashing light signals, gates, or permanent watchmen or flagmen to be present for operation or use of the Crossing, for public safety purposes, Railroad shall not be called upon or required to bear any cost of installing and maintaining and/or furnishing such additional crossing protection, which shall be installed and maintained and/or furnished solely by Licensee. After any Crossing signals have been placed in service, Railroad will operate and maintain said signals, at the sole expense of Licensee. Costs of such signal maintenance and operation (including electric current) will be reviewed periodically, and the amount billed will be revised accordingly. In addition to said signal maintenance and operation expense, Licensee shall reimburse Railroad, within sixty (60) days after receipt of itemized bill from Railroad, (a) the cost of upgrading said signals to prevent obsolescence and (b) the cost of repairing, or replacing, said signals as a result of damages thereto, howsoever resulting. If Licensee fails or refuses to so install, maintain and/or provide or pay costs thereof, Railroad may terminate this Agreement as in Article 12.

- 6 -

## 9. FLAGGING, CONSTRUCTION:

9.1 During any period of construction, maintenance, repair, renewal, alteration, change, or removal of said Crossing, if Railroad deems it advisable to place watchmen, flagmen, inspectors or supervisors for protection of operations of Railroad or others on Railroad's property at the Crossing, Railroad shall have the right to do so, at the expense of Licensee, but Railroad shall not be liable for its failure to do so.

## 10. EXPLOSIVES:

10.1 Neither Licensee nor Licensee's owners, members, contractor(s), agent(s), employee(s) or guest (s), may transport, carry or haul any explosive, flammable, combustible or other hazardous or dangerous materials, goods or commodities across track(s) of Railroad, with the exception of normal household goods.

10.2 Restrictions of this Article shall not apply to gasoline or diesel fuel in the vehicular fuel supply tanks of any vehicle passing over the Crossing nor commercial propane carriers delivering to Licensee.

## 11. ALTERATIONS; TRACK CHANGES:

11.1 Whenever any repairs or changes are made to Railroad's land or track, or if additional tracks are laid at the site of the Crossing, whether on land now used or on land hereafter acquired by Railroad, necessitating repairs to, alteration of, or relocation of the Crossing, each party shall furnish labor and materials to make such repairs to, alterations of, or relocation of their respectively maintained portions of the Crossing under the terms of Article 4, at each party's respective cost, except same shall be at each party's respective cost, except same shall be at the sole cost and expense of Licensee if necessitated by the request or the acts or omissions of Licensee or by law if necessitated by the request or the acts or omissions of Licensee or by law.

11.2 If Railroad shall need or desire to make any change, relocation or improvement in its right-of-way, track, structures, roadbed or other rail or communication facilities (including fiber optic) at said Crossing, or make any changes whatever in, to, upon, over or under its right-of-way or property used or affected by Crossing, Railroad shall make such change(s), and Licensee shall make changes in grading, drainage and approach ways, in accordance with plans satisfactory to Railroad, within thirty (30) days of written approval notice from Railroad, and the costs of same shall be borne in the same manner as provided in Section 11.1.

11.3 If Licensee desires to revise, relocate or change in all or any part of said Crossing, or if Licensee is required to change or alter Crossing, drainage or approach ways, plans therefor shall be submitted to Railroad for approval before any such change is made, and after change or alteration the terms and conditions of this Agreement shall apply thereto.

- 7 -

## 12.   TERM, TERMINATION, REMOVAL:

12.1   This Agreement shall be automatically renewed each year and shall remain in effect until the termination of the Lease Agreement. This Agreement shall be automatically terminated upon the termination of the Lease Agreement. Railroad shall contemporaneously copy Licensee on any notice of intent not to renew the Lease Agreement sent by Railroad to the Georgia Department of Transportation. Railroad also agrees to promptly notify Licensee if Railroad is provided any notice by the Georgia Department of Transportation of an alleged default of the Lease Agreement or otherwise informs Railroad of an intent to terminate the Lease Agreement.

12.2   Upon failure of Licensee to perform or comply with any term, covenant, clause, or condition herein contained, Railroad shall give Licensee written notice of such breach and an opportunity to cure same. If such breach poses a safety hazard, interferes with Railroad's operations, or increases Railroad's liability exposure (including failure to maintain the insurance required herein), Railroad may barricade or otherwise close the crossing to prevent further use. The crossing may be reopened upon Licensee's cure of the breach. If Licensee fails to cure any breach of this Agreement within ninety (90) days of such notice, Railroad shall have the right to terminate this Agreement. Upon receipt of written notice of the termination, Licensee shall remove the Crossing to the satisfaction of Railroad and at sole cost and expense of Licensee. Railroad may barricade or otherwise block said Crossing until removed by Licensee, after such notice of breach, at sole expense of Licensee and without liability to Railroad therefor.

12.3   Within thirty (30) days after termination of this Agreement, unless the parties hereto otherwise agree, said Crossing shall be removed, and all approaches barricaded, and property of Railroad restored in a manner satisfactory to Railroad, all at the sole cost and expense of Licensee. All removal and restoration work to be performed on that portion of said Crossing between the rails of said track(s) and for two feet (2') beyond each rail shall be done by Railroad, at Licensee's sole cost and expense.

12.4   If Licensee fails to make removal as in Section 12.3, Railroad may remove same by employee or contract forces, at Licensee(s) sole risk, cost and expense.

12.5   All rights which Licensee may have hereunder shall cease and end upon the termination date so specified; provided, however, that termination of this Agreement shall not in any manner affect any claims and liability which may have arisen or accrued hereunder, and which, at the time of termination, have not been satisfied.

12.6   After termination, if the crossing should remain in place for use by others, Licensee agrees that neither it, nor anyone accessing its property will continue to use the Crossing.

12.7   Licensee shall provide a right of access to the Georgia Department of Transportation in, on, under, though, above, across or along the Crossing for any emergency purpose(s) including

but not limited to the concern for the safety of the public or property, for the purposes of maintenance or other work on the Georgia Department of Transportation's right of way.

## 13. RAILROAD FORCE ACCOUNT COSTS:

13.1 Railroad's expense for wages of Railroad employees (force account) and materials for any work performed at the expense of Licensee pursuant to this Agreement shall be paid by Licensee within thirty (30) days after receipt of bill therefor.

13.2 Such expense shall include, but not be limited to: cost of supervision, traveling expense, Federal Railroad Retirement and Unemployment Taxes, vacation allowances, insurance and freight and handling charges on all material used. Equipment rentals, if any, shall be in accordance with Railroad fixed applicable rates.

## 14. RISK, LIABILITY, INDEMNITY:

14.1 Licensee, recognizing that Railroad's operations and any use of Railroad property, tracks and right-of-way involve increased risks, hereby assumes all liability for, and waives any right to ask or demand damages for, or on account of, any loss or damage to property of Licensee or any part thereof, at the Crossing location, including loss of or interference with the use of service thereof, regardless of cause, including:

(A) any fault, failure or negligence of Railroad in the construction, operation or maintenance of the Crossing; in rail operations on or over the Crossing; and/or

(B) any fire, regardless of the source or origin thereof.

14.2 Licensee, with the recognition above, and as further consideration for the grant of this crossing right, also assumes all liability for, and releases and agrees to defend, indemnify, protect and save Railroad and the Georgia Department of Transportation harmless from and against:

(A) all loss of or damage to any other property, including property in the care, custody or control of Railroad and of third parties, now situated at or which may be placed at the Crossing or adjacent thereto and the loss of or interference with any use or services thereof; and

(B) all loss and damage on account of injury to or death of any and all person (including but not limited to employees, invitees and patrons of the parties hereto) on the Crossing or adjacent thereto; and

(C) all claims and liability for such loss and damage and cost and expenses thereof;

- 9 -

arising out of, resulting from, or connected in any manner with the construction, reconstruction, maintenance, existence, use, condition, repair, change, relocation or subsequent removal of said Crossing, any parts thereof or appurtenant structures, regardless of cause, including such loss, damage or injury;

> (i) caused in whole or in part by the fault, failure or negligence of Railroad; or
>
> (ii) caused in whole or in part by the fault, failure or negligence of Licensee; or
>
> (iii) resulting from the creation of this license and additional hazards that this Crossing imposes upon Railroad's operations, even if said injury or death, loss or damage, shall occur or result from the joint fault, failure or negligence of Railroad, or
>
> (iv) caused in whole or in part by the fault, failure or negligence of the Georgia Department of Transportation.

14.3    For the purposes of liability and indemnity Article 14 only, all persons, excluding the employees of Railroad and the Georgia Department of Transportation, but including the Licensee and the employees of any independent or subcontracting third parties engaged in any construction or maintenance activities at the Crossing, in any of the work described in this Agreement, shall be deemed to be the sole employees of Licensee while so engaged.

14.4    All obligations of Licensee under this Agreement to release, indemnify and hold Railroad and the Georgia Department of Transportation harmless shall also extend to officers, agents and employees of Railroad and the Georgia Department of Transportation and to companies and other legal entities that control, are controlled by, are subsidiaries of, or are affiliated with Railroad, and their respective officers, agents and employees.

14.5    Licensee shall promptly (within thirty (30) days) advise Railroad and the Georgia Department of Transportation in writing, by Certified Mail or statutory overnight delivery of any claims made against Licensee and/or Railroad under this Agreement or from use of the Crossing.

14.6    The indemnities contained in this Article 14 to the Railroad shall not apply to the extent, and only to the extent, the loss, damage, claim or liability is attributable to the sole negligence of the Railroad. The indemnities contained in this Article 14 to the Georgia Department of Transportation shall not apply to the extent, and only to the extent, the loss, damage, claim or liability is attributable to the sole negligence of the Georgia Department of Transportation.

**15.    INSURANCE:**

- 10 -

15.1    Before the License shall be effective, the Licensee shall at its sole cost and expense procure, provide and deliver to the Railroad and thereafter maintain in effect during the term of this Agreement and until the Crossing has been removed (whichever shall be later) Comprehensive General Liability insurance in an amount not less than Five Million Dollars ($5,000,000.00) per occurrence($1,000,000 underlying coverage with $4,000,000 excess/umbrella per occurrence); Automobile Liability insurance in an amount not less than One Million Dollars ($1,000,000.00) combined single limit; and Statutory Worker's Compensation and Employer's Liability insurance. The policy shall name the Railroad as an Additional Insured and must not contain any exclusions related to doing business on, near, or adjacent to railroad facilities.

15.2    If the Licensee shall employ a contractor for the construction, maintenance, repair, alteration, renewal or removal of the Crossing, then before commencing such work, the Licensee or the Licensee's contractor, as the case may be, shall at its sole cost and expense procure, provide and deliver to the Railroad and thereafter maintain in effect during the construction, maintenance, repair, alteration, renewal or removal of the Crossing, insurance designated by the Railroad and Railroad Protective Liability insurance in an amount not less than One Million Dollars ($1,000,000.00) per occurrence and Two Million Dollars ($2,000,000.00) aggregate for bodily injury, death and property damage liability. The Railroad Protective Liability policy shall name the Railroad as Insured and shall provide for not less than ten (10) days prior written notice to the Railroad of cancellation of, or any material change, in the policy.

15.3    The Licensee shall provide the Railroad with actual policy of Insurance that is shown as paid in full evidencing the insurance required by the License, and shall also provide the Railroad with any replacement policy, also paid in full, evidencing the continuation of such coverage on each anniversary of this Agreement. The policy must further provide that it cannot be cancelled by Licensee without the written consent of the Railroad.

15.4    Any policy procured by Licensee pursuant to Article 15 shall identify Railroad and the Georgia Department of Transportation as an additional insured. Further such policy shall be primary to any other insurance available to Railroad.

15.5    The above policy shall be endorsed to provide for thirty (30) days' notice in writing to Railroad, at the address above, prior to termination of or change in the coverage provided. Railroad may at any time request evidence of insurance purchased by Licensee to comply with this Article and may demand that Licensee purchase insurance deemed adequate by Railroad. Failure of Licensee to comply within thirty (30) days of Railroad's demand shall be an event of default subject to Article 12.

15.6    Said Crossing shall not be opened until said insurance coverage is placed in effect. If at any time and for any reason the Comprehensive General Liability insurance coverage available falls below the required Five Million Dollars ($5,000,000.00), or in the event said insurance is canceled, or is allowed to lapse, said Crossing shall be subject to immediate removal by Railroad

- 11 -

without prior notice to Licensee of such removal. In such event, the entire expense borne by Railroad for removing said Crossing shall be paid for by Licensee.

15.7    Furnishing of insurance by Licensee shall not limit Licensee's liability under this Agreement, but shall be additional security therefor.

**16.    NOTICE(S):**

| | |
|---|---|
| **If to Railroad:** | **Patriot Rail Company LLC**<br>**Attn: Chief Operating Officer**<br>**10060 Skinner Lake Dr.**<br>**Jacksonville, FL 32246** |
| **With a copy to:** | **Patriot Rail Company LLC**<br>**Attn: Real Estate Department**<br>**10060 Skinner Lake Dr.**<br>**Jacksonville, FL 32246** |
| **With a copy to:** | **Patriot Rail Company LLC**<br>**Attn: General Counsel**<br>**10060 Skinner Lake Dr.**<br>**Jacksonville, FL 32246** |
| **If to Licensee:** | **Mr. Gary Knight**<br>**86 Huntington Way**<br>**Blue Ridge, Georgia 30513** |
| **With a copy to:** | **James A. Balli, Esq.**<br>**376 Powder Springs Street, Suite 100**<br>**Marietta, Georgia 30064**<br>**jballi@slhb-law.com** |

16.1    Before doing any work hereunder on Railroad's property, Licensee shall give Railroad's Operations Manager at least ten (10) days' written notice, except that in cases of emergency repairs shorter notice may be given.

16.2    All other notices and communications concerning this Agreement shall be addressed to Licensee at the address above and to Railroad at the address above; or at such other address as either party may designate in writing to the other.

16.3    Unless otherwise expressly stated herein, all such notices shall be in writing and sent via statutory overnight delivery, Certified or Registered Mail, Return Receipt Requested, and shall be effective upon actual receipt or upon date of refusal of delivery.

- 12 -

## 17. TITLE:

17.1  With the exception of any real property already held by recorded instrument, Licensee shall not at any time own or claim any right, title or interest in or to Railroad's property occupied by Licensee's Crossing, nor shall the exercise of this Agreement for any length of time give rise to any right, title or interest in Licensee to said property or the right to use said crossing for purposes other than vehicle and pedestrian traffic per the terms of this agreement. By executing this Agreement, the Railroad is not conceding the legitimacy of any claim by Licensee to any real property reflected on any recorded instrument, and does not waive any adverse claim it has to any such real property and reserves unto itself the right to contest such claim at a future date.

## 18.  BREACH, WAIVER:

18.1  Any waiver by either party at any time of its rights as to anything herein contained shall not be construed as a permanent waiver of such covenant or condition, or any subsequent breach thereof, unless such covenant or breach is so waived in writing by said party.

18.2  Neither the failure of Railroad to object to any work done, material used, or method of construction or maintenance of said Crossing, nor any approval given or supervision exercised by Railroad, shall be construed as an admission of liability or responsibility by Railroad, or as a waiver by Railroad of any of the obligations, liability and/or responsibility of Licensee.

18.3  In the event Licensee breaches Paragraph 12.6 of this agreement and continues to use this crossing after termination of this Agreement, it is agreed by the parties that there is no adequate remedy at law available to Railroad, and Licensee agrees that railroad may immediately file suit and Licensee hereby consents to the entry of an injunction prohibiting its use of the crossing. In the event Railroad feels it is required to seek such injunction, Licensee further agrees that the Court entering such injunction shall also award to the prevailing party its reasonable attorneys fees incurred in seeking or opposing such injunction.

18.4  If Licensee is in default of any covenant, agreement, or provision incorporated into the License, not involving the required insurance, for a period of thirty days after written notice of such default from the Railroad, the Railroad may, at its option, immediately terminate this Agreement and the License provided herein by providing written notice of termination to the Licensee. If Licensee is in default of any provision involving insurance, the Railroad may, at its sole option, terminate this agreement and immediately remove the crossing so as to insure the safety to the users and of the rail line. It will be further agreed by the parties that under no circumstance will the Licensee utilize the equitable powers of any court to seek an injunction to prevent the Railroad from removing the crossing, it being agreed in advance that monetary damages, if any, will be adequate to compensate Licensee for any harm suffered. Licensee will reimburse Railroad for all expenses incurred in the removal of the crossing.

## 19. DEVELOPMENT, THIRD PARTIES AND ASSIGNMENTS:

19.1    Neither this Agreement nor any provision hereof or agreement or provision included herein by reference shall operate or be construed as being for the benefit of any third person other than the Georgia Department of Transportation, who has not signed this Agreement or otherwise became subject to the Agreement under said Agreements terms.

19.2    This Agreement shall be binding upon and inure to the benefit of the parties hereto and the successors and assigns of Railroad, and the heirs, legal representatives, successors or assigns of Licensee, as the case may be, but, this license is a personal privilege granted to Licensee and therefor, no assignment sublease or sublicense hereof or of any rights or obligations hereunder shall be valid for any purpose.

## 20. TOTAL AGREEMENT:

20.1    This Agreement contains the entire understanding between the parties hereto, and cannot be changed, altered, amended or modified, except by written instrument subsequently executed by the parties hereto.

## 21. FORM, SEVERABILITY, GOVERNING LAW:

21.1    Neither the form nor any language of this Agreement shall be interpreted or construed in favor of or against either party hereto.

21.2    This Agreement is executed by all parties under current interpretation of any and all applicable Federal, State, County, Municipal or other local statute, ordinance or law. Each and every separate division (paragraph, clause, item, term, condition, covenant or agreement) herein contained shall have independent and severable status from each other separate division, or combination thereof, for the determination of legality, so that if any separate division herein is determined to be unconstitutional, illegal, violative of trade or commerce, in contravention of public policy, void, voidable, invalid or unenforceable for any reason, that separate division shall be treated as a nullity, but such holding or determination shall have no effect upon the validity or enforceability of each and every other separate division herein contained, or any other combination thereof.

21.3    This Agreement shall be governed by, and construed in accordance with, the laws of the State of Georgia without regard to its conflicts of law principles

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate the day and year first above written.

Witness(es) for Railroad:

**GEORGIA NORTHEASTERN RAILROAD COMPANY LLC**

By: _____

David C. Eyermann, President

Witness(es) for Licensee:

**GARY AND LIZABETH KNIGHT,** Licensees

By: _____
GARY KNIGHT

By: _____
LIZABETH KNIGHT

**CABIN RENTALS OF GEORGIA, LLC**

BY: _____
ITS: Atty in Fact

- 15 -