## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| 7 IL PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 2:21-cv-226-RWS |
| | ) | |
| GARY KNIGHT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | _____ |

## GARY KNIGHT'S RESPONSE IN OPPOSITION TO 7 IL PROPERTIES, LLC'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

Gary Knight hereby files his Response Brief in Opposition to 7 IL Properties, LLC's Motion for Summary Judgment, as follows:

## PRELIMINARY STATEMENT

In the interests of judicial economy, Mr. Knight will attempt to limit duplicative arguments to those found within his Brief in Support of his own Motion for Summary Judgment [Doc. 63], and incorporates those by reference.

## INTRODUCTION

This matter involves a complicated set of facts following the failed consummation of two land contracts, but the Parties actually agree on a great deal. It is the few points where the Parties disagree that place the Devil in the proverbial details. The first three counts of 7 IL's case cannot reasonably survive dismissal,

the fourth count, breach of contract, should follow suit, but dismissal is the subject of another motion. Summary judgment cannot be granted in favor of 7 IL on any claim, but the devilish details concern breach of contract.

At the risk of oversimplifying the issues, these details may be distilled to the following question:

Who's fault is it that the two contracts failed to close?

(1) Mr. Knight's fault for failing to appear at closing on June 1, 2021, as per 7 IL; or

(2) 7 IL's fault because its attorney, Mr. Wilson, failed to draft the agreed easements until June 2, 2021, as per Mr. Knight.

At a minimum, there is a sufficient issue of material fact for both questions to bar a grant of summary judgment in favor of 7 IL on the simple grounds that Mr. Wilson, himself, testifies that he failed to draft the contracted easements until at least June 2, 2021, and 7 IL concedes that its attorney, Mr. Wilson, was the man for the job. Mr. Knight believes that he is entitled to summary judgment on all counts raised by 7 IL, but will reserve that argument for his own motion.

7 IL raises four unsound claims, none of which are ripe for summary judgment in 7 IL's favor. Count I for specific performance is barred by Georgia Law on the grounds that a monetary remedy (in the form of its own Count IV breach of contract claim) exists. Count II for breach of warranty of title cannot

succeed because no title was ever conveyed to be breached. Count III for negligent misrepresentation may not prevail per Georgia Law because 7 IL did not take any steps to discover the encroachment on the abutting property. Finally, Count IV for breach of contract claim cannot succeed on summary judgment where there is a genuine issue of material fact as to whether the preparation of the easements was not performed by 7 IL's attorney, Mr. Wilson.

7 IL's Motion for Summary Judgment must be Denied as to all claims.

## FACTUAL BACKGROUND

**A.     253 River Heights Road Deal.**

On March 14, 2021, Mr. Knight and John Thatcher (as managing member of 7 IL Properties, LLC) executed a purchase and sale agreement under which 7 IL would purchase that property identified as 253 River Heights Road, Blue Ridge, Fannin County, Georgia 30513 (hereafter, "253 River") from Mr. Knight pursuant to the terms of said agreement (hereafter, the "253 River PSA"). Statement of Undisputed Facts, ¶ 1. Attorney Terry L. Wilson was the closing attorney for the 253 River PSA and the 92 Fish Trap PSA (addressed *infra*). SOUF ¶ 2. In part because both deals were cash deals, Mr. Wilson represented the Buyer, 7 IL, in both deals. SOUF ¶ 3. As a result, Mr. Wilson was the attorney for 7 IL.

The closing date for the 253 River PSA was June 1, 2021. SOUF ¶ 4.

253 River abuts the Toccoa River. SOUF ¶ 5. The road access to 253 River and the Toccoa River access to 253 River are separated by the Blue Ridge Scenic Railway (hereafter, the "Railroad"). SOUF ¶ 6. 253 River does not have its own access to cross the Railroad. SOUF ¶ 7.

The "home" on 253 River is across the Railroad from the Toccoa River. SOUF ¶ 8. Without access to cross the Railroad, inhabitants and/or guests in the home on 253 River would not be able to access the Toccoa River. SOUF ¶ 9.

253 River may be seen on the plat within the 253 River PSA as Lot 15. SOUF ¶ 10. Mr. Knight also owns Lot 13 on this plat. Through Lot 13, Mr. Knight owns access to cross the Railroad to access the Toccoa River. SOUF ¶ 12.

For this reason, 7 IL negotiated an easement in concept, but not in detail, with Mr. Knight to allow the inhabitants and/or guests of 253 River (Lot 15) to utilize the Railroad access on Lot 13. SOUF ¶ 13. Without such an easement, guests of 7 IL at 253 River would have been unable to cross the Railroad to access the Toccoa River. SOUF ¶ 14. 7 IL deemed this easement necessary to purchase 253 River. SOUF ¶ 15.

As a result, Amendment to Agreement 3 (previously, erroneously marked as 2 in the 253 River PSA) was drafted (hereafter, "253 River Amendment 3"). SOUF ¶ 15. 253 River Amendment 3 was executed by the Parties on April 5, 2021. SOUF ¶ 17. 253 River Amendment 3 states in part that (a) "Buyer to

maintain $5 Million liability insurance for railroad crossing in order to use easements," and (b) "community well agreement / easements to be written by Licensed Georgia attorney at or prior to closing." SOUF ¶ 18.

Mr. Wilson was aware of the easement issues on the 253 River and 92 Fish Trap properties (including well water, river access and footpaths) from a prior closing on a property previously owned by Mr. Knight which had been sold to a fellow named Thor James. SOUF ¶ 19. Mr. Thatcher stated that he did not want any properties without proper easements. SOUF ¶ 20. As of May 28, 2021, (as stated in a text message to Dee McBee, 7 IL's realtor), Mr. Thatcher had not yet seen the easements and wanted to get the wording correct. SOUF ¶ 21.

**B.    92 Fish Trap Road Deal.**

On April 2, 2021, Gary Knight and John Thatcher (as managing member of 7 IL Properties, LLC) executed a purchase and sale agreement under which 7 IL Properties, LLC would purchase that property identified as 92 Fish Trap Road Road, Blue Ridge, Fannin County, Georgia 30513 (hereafter, "92 Fish Trap") from Mr. Knight pursuant to the terms of said agreement (hereafter, the "92 Fish Trap PSA"). SOUF ¶ 22. On April 5, 2021, the Parties executed Amendment 1 to the 92 Fish Trap PSA, which required that "river easements and community well (water) maintenance agreements … be drafted by [a] Georgia licensed attorney prior to or at closing." SOUF ¶ 23. No further details were provided.

The Fish Trap Agreement included Seller's Disclosures, but these Disclosures had not "affirmatively verified that there were no encroachments, unreported easements, or boundary line disputes as to the Fish Trap Property … as well as verifying that none of the improvements to the Fish Trap Property encroached onto a neighboring property." RESP SOUF ¶ 24. Instead, the Seller's Disclosures confirmed that Mr. Knight was not aware of any such issues at that time. RESP SOUF ¶ 24. The language of the Seller's Disclosures themselves state that it "is intended to make it easier for Seller to fulfill Seller's legal duty to disclose hidden defects in the Property of which Seller is aware." RESP SOUF ¶ 24. The Seller's Disclosures go on to instruct the Seller to "(2) answer all questions fully, accurately and to the actual knowledge and belief of all Sellers." RESP SOUF ¶ 24. Moreover, the Seller's Disclosures caution the Buyer as per "caveat emptor or 'buyer beware'" being the "law in Georgia" and to thoroughly inspect and investigate the property. RESP SOUF ¶ 24. Mr. Knight executed this Seller's Disclosure as to his "actual knowledge and belief." RESP SOUF ¶ 24.

7 IL wanted to have the easements on the 92 Fish Trap property drafted by a licensed attorney, and wanted written easements for well water and for access to the Toccoa River. SOUF ¶ 24. According to Mr. Thatcher, the Parties had agreed to include a footpath easement in the 92 Fish Trap PSA. SOUF ¶ 25. The 92 Fish

Trap PSA does not specifically discuss any footpath easement because the amendment is incredibly indefinite. SOUF ¶ 26.

The 92 Fish Trap PSA contemplated the purchase of Lot 10 on the plat enclosed within. SOUF ¶ 27. The plat within the 92 Fish Trap PSA was not created by Mr. Knight and preexisted Mr. Knight's ownership of 92 Fish Trap. SOUF ¶ 28.

7 IL has never seen a draft version of the easements required by Amendment 1 to the 92 Fish Trap PSA. SOUF ¶ 29. This is despite the fact that Mr. Thatcher emailed Mr. Knight on April 2, 2021 advising Mr. Knight that the easements were "too vague," that he "thought an attorney was going to write" the easements, that an easement "map would help in the future," that he did not want to insure the easement, and that a defined easement needed to be drawn regarding well water. SOUF ¶ 30. This is also despite the fact that 7 IL and Mr. Thatcher believed that these easements needed to be drafted before closing. SOUF ¶ 31. This position, of course, made sense.

Unfortunately, the Amendment to the 92 Fish Trap PSA was extremely vague to the point of needing clarification as to what was agreed, and it was never clarified before closing. SOUF ¶ 32. Mr. Thatcher has no reason to believe that Mr. Knight knew there was an error with the plat surrounding 92 Fish Trap prior to April 2, 2021. SOUF ¶ 33.

Neither 7 IL, nor Mr. Thatcher ordered a survey of either property. SOUF ¶ 34.

While 7 IL was in the process of purchasing 92 Fish Trap Road from Mr. Knight, a fellow named Gary Branch was in the process of purchasing the neighboring property, 100 Fish Trap Road from Mr. Knight. SOUF ¶ 35. 100 Fish Trap Road is marked on the plat as Lot 9. SOUF ¶ 36.

On April 18, 2021, at Mr. Branch's request, Mr. Knight and Mr. Branch entered an Amendment 3 to their own agreement for the purchase of 100 Fish Trap Road requiring a survey of Lot 9 to be completed at Mr. Branch's expense. SOUF ¶ 37. Mr. Branch was invoiced for and ultimately paid for the survey. SOUF ¶ 38.

The results of the survey demonstrated that there was an encroachment, which was later marked as Lot 10A on the survey (hereafter, the "Encroachment"). SOUF ¶ 39. On May 31, 2021, the preliminary survey, ordered by Mr. Branch, was completed by the surveyors. SOUF ¶ 40. On June 1, 2021, the survey was recorded. SOUF ¶ 41.

The Encroachment was a property line cut wherein 92 Fish Trap Road sliced into the driveway for 100 Fish Trap Road and wherein part of a retaining wall also stretched over the boundary line per the original plat. SOUF ¶ 42.

**C.    Attempted Closing.**

Mr. Wilson was the licensed Georgia attorney who was drafting the easements for both properties. SOUF ¶ 43. Mr. Wilson was the only licensed Georgia attorney involved in the 253 River PSA and 92 Fish Trap PSA. SOUF ¶ 44. As noted above, Mr. Wilson represented 7 IL.

On April 13, 2021, Mr. Knight emailed Mr. Wilson's assistant Kristin Chancey regarding the negotiated easements for both properties. SOUF ¶ 45. On May 26, 2021, Mr. Knight's realtor, Brian White, emailed Mr. Wilson stating that he had "just got off the phone with Gary Knight and he asked if [Mr. White] would check in on the easement that [Mr. Wilson was] drafting for 92 and 100 Fish Trap," and further that Mr. Knight "mentioned he [wasn't] comfortable reviewing day of closing and would like to have time to review beforehand." SOUF ¶ 46.

Later on May 26, 2021, Mr. Wilson responded that he spoke with Mr. Knight at length and planned to get the easements to Mr. Knight by May 27, 2021. SOUF ¶ 47. On May 27, 2021, in response to a request for the draft easements by Mr. Thatcher, Mr. Wilson sent Mr. Thatcher draft easements for the Thor James property (which was a prior project of Mr. Wilson). SOUF ¶ 48.

Without the easements, Mr. Knight did not tell Mr. "Thatcher that he did not want to proceed with the closings given the encroachment issue." RESP SOUF ¶ 40. Mr. Knight told Mr. Thatcher that he did not "think" they were going to be

able to close due to the easements. RESP SOUF ¶ 40. No one was ready to close because the easements were not drafted. RESP SOUF ¶¶ 43, 44.

According to Mr. Thatcher, Mr. Thatcher did not see the draft easements until May 31 or June 1, 2021. SOUF ¶ 49. At 6:54pm on June 1, 2021, Mr. White emailed Mr. Wilson asking for draft easements which had not yet been completed. SOUF ¶ 50. At 7:52am on June 2, 2021, Mr. Wilson responded to Mr. Knight with easements for Mr. James's property that was not part of either the 253 River PSA or the 92 Fish Trap PSA. SOUF ¶ 51.

The draft easements that Mr. Wilson sent to Mr. Knight and Mr. White on June 2, 2021 (the day after scheduled closing) were incomplete and on their face required the signature of Mr. James who was not expected to be at closing on June 1, 2021. SOUF ¶ 52. Mr. Wilson had neither drafted, nor presented to Mr. Knight any easement for the 253 River PSA or 92 Fish Trap closing on or before June 1, 2021. SOUF ¶ 53. Mr. Wilson had provided zero easements by June 1, 2021. SOUF ¶ 54. Mr. Wilson has still never produced any appropriate easement drafts.

According to Mr. Wilson, at the closing table on June 1, 2021, in response to the Encroachment, Mr. Thatcher was negotiating saying that he would close that day if the purchase price for 92 Fish Trap was reduced by $50,000.00. SOUF ¶ 55. According to Mr. Thatcher, the price reduction was to be $25,000.00. SOUF ¶ 56.

Mr. Thatcher did not state that he was willing to close the deals as agreed.  SOUF ¶ 57.  Even as of closing, this deal was still being negotiated.

## DISCUSSION

"Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996).  If the nonmoving party has failed to provide evidence that a reasonable factfinder may find in its favor, no genuine issue of material fact exists.  *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

**A.     7 IL Cannot Prevail On Summary Judgment For Specific Performance Because Monetary Damages Are Available And Because The PSAs Are Vague.**

7 IL spends a fair amount of time attempting to explain where a claim for specific performance may be made.  It ignores settled Georgia Law which states where it may not.

The Georgia Appellate Courts have expressly rejected claims for specific performance, even in real estate cases, where a monetary remedy exists, as here.  "Specific performance is an extraordinary, equitable remedy, which will be granted **only** if the complainant does not have an adequate remedy at law."  *Sexton v. Sewell*, 351 Ga. App. 273, 275 (830 S.E.2d 605) (2019) (emphasis supplied) (expressly rejecting the premise that real estate purchases are always subject to

specific performance on the grounds that every property is unique, and instead holding that "a plaintiff may **seek** specific performance if the sales contract meets certain requirements" at 280, emphasis in original). The *Sexton* Court went on to find that because the aggrieved party "could have obtained an award of monetary damages that adequately compensated them for the" alleged breach, specific performance was not an available remedy. *Id.*, at 281.

7 IL relies on *Golden v. Frazier*, 244 Ga. 685, 687 (261 S.E.2d 703) (1979) and *CDM Custom Homes, Inc. v. Windham*, 280 Ga. App. 728, 731 (634 S.E.2d 780) (2006) which allowed specific performance cases to proceed, but *Sexton* distinguishes both, noting that neither case addressed "whether the plaintiffs had an adequate remedy at law that would have precluded specific performance." *Sexton*, at 281. *Sexton* went on to hold that "while the cases hold that a plaintiff may *seek* specific performance if the sales contract meets certain requirements, they do not stand for the proposition that the plaintiff is automatically entitled to specific performance absent a showing that no adequate remedy at law exists." *Id.*

In this matter, 7 IL has conceded that a monetary remedy exists in Count IV for breach of contract. Moreover, even if 7 IL had not filed Count IV, such a decision would not eliminate the potential monetary remedy through a breach of contract claim. 7 IL has set forth the exact amounts of damages that it believes it is

entitled to within Paragraphs 58 and 59 of its Statement of Material Facts. There is no question that, if successful, a remedy at law exists.

7 IL's specific performance claim probably should have been subject to a motion to dismiss at the outset of this litigation, but it certainly cannot be successful at this stage given the availability of these monetary damages.

In addition to the issue of a remedy at law, both PSAs are vague as to the subject matter.

The prices for the subject properties were not low, and the realtors stood to earn fair commissions from the sale. As a consequence they appeared to rush through the contractual provisions leaving a great deal to speculation and assumption. Unfortunately, the critical easements for both Properties fell into this category.

The Parties agree that concrete easements as to river access, well water and footpaths were essential to both PSAs, but because the realtors rushed in drafting the PSAs and Mr. Wilson delayed in drafting the easements, neither Party could explain or agree on how the easements should read. As a result, the subject matter of the PSAs remains vague. Under Georgia Law, specific performance is only an available remedy for the purchase of land where the purchase agreement is "specific as to all essential elements: (1) subject matter; (2) purpose; (3) parties;

(4) consideration; and (5) time and place of performance." *Hutson v. Young*, 255 Ga. App. 169, 171 (564 S.2d 780) (2002).

Mr. Wilson could have prepared easements in advance of closing, or at least by closing on June 1, 2021, but he did not do so until at least June 2, 2021, after closing. Without these easements, the Parties were flying blind as to what they were buying and selling. The "subject" of the PSAs was vague.

As noted in Mr. Knight's Motion, even if this Court were to ignore *Sexton*, the Court would be forced to ask what specifically should be specifically performed. This Court would have to blue pen the terms of the easements for both PSAs, which is very gritty work.

7 IL's Motion asks the Court to do just that. Were this Court to grant 7 IL's Motion, it would need to grant easement rights. What hours for the railroad crossing and the footpaths would the Court impose? What liability insurance limits would the Court require 7 IL to maintain to cross Mr. Knight's other properties? How would the Court allocate the well water access and electrical expenses? Most importantly, what would be the basis for these determinations?

Because of Mr. Wilson's incredible lack of diligence, the Parties arrived at June 2, 2021, the day **after** closing with no idea how those questions should be answered. Yet, the Court should bear the burden of telling the Parties what they

agreed to. 7 IL's Motion should be Denied with regard to specific performance. At the very minimum there is an enormous issue of fact.

**B.     7 IL Cannot Prevail On Summary Judgment For Breach Of Warranty Of Title Because Title Was Never Conveyed.**

Neither PSA closed. As a result, Mr. Knight did not convey title for anything to 7 IL. 7 IL appears to concede, per its Motion, that it may only prevail on breach of warranty of title if it first prevails on its claim of specific performance. [Doc. 65-1, pp. 18-19]. This is certainly correct.

Given the absence of an actual conveyance of any title, it is rudimentary that there can be no breach thereof. The problem that 7 IL faces is that specific performance cannot succeed as a matter of law, and certainly due to a genuine issue of material fact, as discussed above. Therefore, it is impossible for 7 IL to prevail on summary judgment for breach of warranty of title. 7 IL's Motion should be Denied with regard to breach of warranty of title.

**C.     7 IL Cannot Succeed On Its Claim For Negligent Misrepresentation At Summary Judgment Because It Failed To Perform Due Diligence That Would Have Revealed The Truth Of The Matter.**

7 IL's claim for negligent misrepresentation is akin to a driver blaming another driver for a collision where a stop sign had fallen over. Mr. Knight had bought 92 Fish Trap subject to the land plat recorded with the county at the time.

He never ordered a survey of the Property.[1]  7 IL attempted to purchase 92 Fish Trap subject to the same land plat.  7 IL never ordered a survey of the Property.

The whole issue arose when Mr. Branch ordered a survey, which contradicted the existing plat.  Mr. Walker advised Mr. Knight of this apparent issue on April 22, 201, but did not confirm the problem until May 31, 2021 when the new plat was completed.

When Mr. Knight had signed his Seller's Disclosures, he had been unaware of this issue.  The Seller's Disclosures themselves cautioned 7 IL to investigate the matter.  7 IL declined to do so.

Someone else, years prior, had knocked over the stop sign.  Mr. Knight was unaware.  7 IL was unaware.  Inexplicably, 7 IL believes that Mr. Knight is liable for failing to notice that the stop sign was knocked over before it was too late, even though Mr. Branch (who ordered the survey) avoided the collision (from the buyer's seat) by seeing the stop sign.  This is contrary to Georgia Law.

As previously noted, in *Trico Environmental Srvcs., Inc. v. Knight Petroleum Co.*, 357 Ga. App. 826, 831 (849 S.E.2d 538) (2020), the Georgia Court of Appeals upheld a grant of summary judgment in favor of the defendant where the plaintiff could have pulled records from city hall as due diligence to avoid the allegedly

---

[1] Contrary to 7 IL's claim, Mr. Walker and Mr. Branch clearly support this statement by Mr. Knight.  Doc. 63-14, Branch Depo. 8:11-17; 10:23-11:2; 21:1-21; 22:5-8; Exhs. A & D; *and* Doc. 64-4, Walker Depo. 6:17-25.

false information.  The *Trico* Court held that negligent misrepresentation is not an available remedy in real estate transactions where due diligence could have revealed the truth of the matter to avoid damage.  *Trico*, at 832.

All 7 IL had to do was require a survey as a condition of the Fish Trap PSA to avoid this fiasco.  Then, 7 IL would have been spared just like Mr. Branch.  It did not do so, but instead seeks damages for its own lack of diligence.

As with specific performance, negligent misrepresentation should have been dismissed long ago.  Dismissal not being the subject of this brief, at the very minimum, there exists a genuine issue of material fact as to whether 7 IL's own negligence caused the failure to catch the encroachment.  7 IL's Motion should be Denied with regard to negligent misrepresentation.

**D.    7 IL Cannot Succeed At Summary Judgment On Its Claim For Breach Of Contract Because The PSAs Were Both Fatally Vague As To The Required Easements And Because 7 IL's Failure To Draft Easements Renders 7 IL The Cause Of The Breach.**

If any of 7 IL's claims are to **survive** summary judgment, it would be breach of contract, but the factual issues absolutely bar a grant of summary judgment in favor of 7 IL.

This turns now to the issue of who's fault it is that the two contracts failed to close.

> (1)    Mr. Knight's fault for failing to appear at closing on June 1, 2021, as per 7 IL; or

17

(2)    7 IL's fault because its attorney, Mr. Wilson, failed to draft the agreed easements until June 2, 2021, as per Mr. Knight.

The answer cannot be number 1, that Mr. Knight is at fault for failing to appear at closing on June 1, 2021, as per 7 IL.

The evidence demonstrates that Mr. Wilson, the attorney for 7 IL, identified as the Georgia licensed attorney in the only clear section of either Easement Amendment, failed to draft any easements on or before June 2, 2021, as contracted in both PSAs, and as per his own admission, eliminating 7 IL's right to complain.

7 IL makes a great show of claiming that Mr. Thatcher wanted to close on behalf of 7 IL, but that Mr. Knight baselessly refused. To this day, without easements (which 7 IL and Mr. Thatcher viewed as critical), Mr. Knight wonders what exactly the Parties would have signed.

This is because 7 IL, through its agent Mr. Wilson, failed to perform.

Under Georgia Law only a party "who has the right to complain about the contract being broken" may make a claim for damages. *Atlanta Partners Realty, LLC v. Wohlgemuth*, 365 Ga. App. 386, 396 (878 S.E.2d 615) (2022). A material issue of fact exists as to whether 7 IL has any right to complaint about the PSAs being broken. Within its Brief, 7 IL cites *Kuritzky v. Emory Univ.*, 2294 Ga. App. 370, 371 (669 S.E.2d 179) (2008) to provide the elements of a claim for breach of contract.

While *Kuritzky* deals with a medical student's claims for breach of contract following expulsion, it correctly states the elements. The third element, as highlighted in *Wohlgemuth* is the key: "to the party who has the right to complain about the contract being broken."

For the purposes of this Brief (which does not consider dismissal), Mr. Knight notes that there is sufficient evidence to create an issue of fact as to whether the reason that the PSAs were not closed fell on Mr. Wilson's lack of diligence. As such, it was not Mr. Knight who broke the PSAs, but rather 7 IL. For this reason alone, summary judgment must be denied.

Nonetheless, enforcing an incomplete and vague agreement is also not the province of the courts. Georgia Common Law is suspicious of vague contracts with multiple potential meanings. *Southeastern Underwriters, Inc. v. AFLAC, Inc.*, 210 Ga. App. 444, 446 (436 S.E.2d 556) (1993) (concluding that under some circumstances "deficiencies or ambiguities may be explained by facts aliunde the instrument itself," but that "information of such extrinsic nature may not be utilized to supply that which is essential to constitute a valid contract").

The 92 Fish Trap PSA said only that the easements were to be drafted by a Georgia licensed attorney at or before closing. The 253 River PSA added some attempt at vague detail, but nothing concrete, such as the hours of the footpath

easement or the payor for the well water electric bill that Mr. Thatcher complained of to his attorney Mr. Wilson.  Mr. Wilson agreed to draft both sets of easements.

Mr. Knight made repeated demands for drafts of the easements, which were certain to be complicated, but Mr. Wilson never produced a single draft of the easements even as of today.  The best Mr. Wilson managed was to provide some templates used before with other properties that bore signature lines for Thor James who had nothing to do with either the 92 Fish Trap PSA or the 253 River PSA.

In doing so, Mr. Wilson prolonged the negotiations over the proposed easements beyond the June 1, 2021 closing date.  This had the net effect of both a default on the part of 7 IL through the failings of Mr. Wilson to draft appropriate easements as required by both PSA Amendments, and to render both contracts sufficiently vague as to the actual terms of what was being purchased without defined easement terms.

It does not make sense at this stage to have this Court address the missing terms of the easements.  Again, how would the Court determine terms such as the hours for the railroad crossing and the footpaths, the liability insurance limits to require 7 IL to maintain to cross Mr. Knight's other properties, and the allocation of well water access and electrical expenses?  Again, what would be the basis for these determinations?

In reality, there is no enforceable contract at all.  The PSAs are too vague.

"The defense of vagueness and indefiniteness is … a question of interpretation and ascertaining the intent of the parties." *Denton v. Hogge*, 208 Ga. App. 734 (431 S.E.2d 728) (1993) (rendering a real estate contract unenforceable due to indefinite provisions in its financing provision).

The obvious solution to all of the issues in the entire action would have been for Mr. Wilson to draft the proposed easements well in advance of closing. Doing so would have likely led to negotiation. This itself, of course, demonstrates the complete lack of a contract in either PSA. Still, Mr. Wilson did not do so. Mr. Wilson was the agent and attorney for 7 IL. To answer the question above, it is exclusively 7 IL's fault that these PSAs never closed. There is, at minimum, a genuine issue of fact to this effect.

7 IL's Motion for summary judgment on breach of contract, for a non-existent, vague contract, that 7 IL is responsible for breaching, must be Denied.

## CONCLUSION

7 IL's Motion for Summary Judgment should be Denied with regard to all counts.

Respectfully submitted, this 5th day of December, 2023.

/s/ Frank G. Podesta
Frank G. Podesta
GA Bar No. 496530
fpodesta@fgplaw.com

555 Sun Valley Drive
Suite N-3
Roswell, Georgia 30076
678.677.5143 (voice)
678.222.0123 (facsimile)
*Attorneys for Gary Knight*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **Response Brief In Opposition To Summary Judgment And Response To Statement of Material Facts** was prepared using 14 Point Times New Roman Font, and that on December 5, 2023, I filed the foregoing with the Clerk of Court, and served via same on all counsel of record via this Court's CM/ECF electronic filing system.

Respectfully submitted, this 5th day of December, 2023.

FGP LAW, LLC


/s/ Frank G. Podesta
Frank G. Podesta
Georgia Bar No. 496530