# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| 7 IL PROPERTIES, LLC, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 2:21-cv-226-RWS |
| | ) |
| GARY KNIGHT, | ) |
| Defendant. | ) |

## GARY KNIGHT'S RESPONSE TO 7 IL PROPERTIES, LLC'S STATEMENT OF MATERIAL FACTS, AND GARY KNIGHT'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO 7 IL PROPERTIES, LLC'S MOTION FOR SUMMARY JUDGMENT

Gary Knight hereby files his Response to 7 IL Properties, LLC's Statement of Material Facts and his Statement of Additional Undisputed Facts in opposition to 7 IL's Motion for Summary Judgment, as follows:

## RESPONSE TO STATEMENT OF MATERIAL FACTS

1. Mr. Knight generally Admits that a contract was signed as described, but denies that there was a meeting of the minds between the Parties at the time of execution. In particular, there were serious misunderstandings about the River Heights Property, including, but not limited to conditions which were later incorporated into the contract by amendment concerning easements and the drafting thereof. Thatcher Depo. 24:14-16, 104:5-10, Exh. A, p. 20, etc.

2. Admitted.

3. Admitted.

4. Admitted.

5. Denied. Mr. Knight testified that there was some uncertainty on the part of John Thatcher. Doc. 64-2, Knight Depo., 55:6-13.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Mr. Knight generally Admits that a contract was signed as described, but denies that there was a meeting of the minds between the Parties at the time of execution. In particular, there were serious misunderstandings about the River

Heights Property, including, but not limited to conditions which were later incorporated into the contract by amendment concerning easements and the drafting thereof. Doc. 63-2, Thatcher Depo. 24:14-16, 104:5-10, Exh. A, p. 20, etc.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Mr. Knight Admits that the Fish Trap Agreement included Seller's Disclosures, but Denies that the Disclosures "affirmatively verified that there were no encroachments, unreported easements, or boundary line disputes as to the Fish Trap Property … as well as verifying that none of the improvements to the Fish Trap Property encroached onto a neighboring property." Instead, the Seller's Disclosures confirmed that Mr. Knight was **not aware of** any such issues. The language of the Seller's Disclosures themselves state that it "is intended to make it easier for Seller to fulfill Seller's legal duty to disclose hidden defects in the Property of which Seller **is aware**." The Seller's Disclosures go on to instruct the Seller to "(2) answer all questions fully, accurately and to the **actual knowledge and belief** of all Sellers." Moreover, the Seller's Disclosures caution the Buyer as per "caveat emptor or 'buyer beware'" being the "law in Georgia" and to thoroughly inspect and investigate the property. Doc. 63-9 Fish Trap Package, p.

13. Mr. Knight executed this Seller's Disclosure as to his "**actual knowledge and belief**." Doc. 63-9 Fish Trap Package, p. 19.

    25.    Admitted.

    26.    Mr. Knight Admits that he caused concrete to be poured onto the driveway. Mr. Knight Denies that he constructed the driveway originally. The driveway predated Mr. Knight's purchase of the Property. Doc. 64-2, Knight Depo., 79:10-14.

    27.    Admitted.

    28.    Denied. The Fish Trap Survey was ordered and paid for by Gary Branch, not Gary Knight. Doc. 63-14, Branch Depo. 8:11-17; 10:23-11:2; 21:1-21; 22:5-8, Exhs. A & D. Doc. 64-4, Walker Depo. 6:17-25.[1]

    29.    Denied. On April 22, 2021, Mr. Walker notified Mr. Knight and Mr. Branch "where the property line **appeared to be** running," which is not the same as notifying Mr. Knight of a certain problem. Doc. 64-4, Walker Depo. 11:22-23. Formal notice did not occur until May 31, 2021 when the draft survey was completed. Doc. 63-14, Branch Depo., Exh. C. Mr. Knight did not become firmly notified of the encroachment until May 31, 2021. Doc. 64-2, Knight Depo. 95:2-5.

    30.    Admitted.

    31.    Admitted.

---

[1] Incidentally, there is not Page 119, as suggested by 7 IL, in the Walker Deposition.

32. Denied, as per Denial in Paragraph 29. Denied also on the grounds that Mr. Thatcher admits to having learned of the encroachment no later than May 31, 2021. Doc. 63-2, Thatcher Depo. 62:2-9.

33. Admitted.

34. Admitted.

35. Denied. This is a gross mischaracterization of Mr. Knight's testimony. Mr. Knight testified that Mr. Williams, "couldn't get his easement agreements ever on time for virtually anything … [that] they always came last minute … [and that he] always had to come back and get stuff done properly." In essence, Mr. Knight was aware that Mr. Williams had previously attempted to draft or amend easement agreements on the day of closing, but had generally failed. Doc. 64-2, Knight Depo. 95:23-96:25.

36. Admitted.

37. Admitted.

38. Denied. Mr. Wilson had not prepared the easements or transmitted them to Mr. Knight even as of June 2, 2021. Doc. 64-3, Wilson Depo. 55:13-56-8; 56:16-24. Moreover, even the form of the easements that Mr. Wilson transmitted to Mr. Knight on June 2, 2021 remained in draft form including the name Thor James on the documents because what Mr. Wilson was transmitting were forms that he intended to begin working from, not actual easements, which demonstrates

that Mr. Wilson had not even provided Mr. Thatcher or 7 IL with easements as of June 2, 2021, **after** the June 1, 2021 closing date. Doc. 64-3, Wilson Depo. 56:1-24.

39. Admitted.

40. Denied. Mr. Knight did not tell Mr. "Thatcher that he **did not want** to proceed with the closings given the encroachment issue." Mr. Knight told Mr. Thatcher that he did not "**think**" they were going to be able to close due to the easements. Doc. 64-2, Knight Depo. 98:16-23.

41. Admitted.

42. Admitted.

43. Mr. Knight Admits that Mr. Thatcher, as thus 7 IL, appeared at the closing. Mr. Knight Denies that anyone was "ready to close," for an myriad of issues, not the least of which Mr. Wilson's failure to prepare the easements. Doc. 64-3, Wilson Depo. 56:1-24.

44. Denied. Mr. Knight said that his attorney [not the undersigned] spoke with Mr. Wilson, and Mr. Wilson had "agreed that this [couldn't] close" on June 1, 2021. Doc. 64-2, Knight Depo. 103:16-104:3. The transcript does not support the citation that 7 IL is presenting with regard to Mr. Knight potentially speaking with Mr. Wilson. The question asked of Mr. Knight at 103:2-7 was "why did you think that you **could** just go to the closing attorney and talk to the closing attorney about

what these issues were?" Mr. Knight responded the the concept that he **could** speak with Mr. Wilson, that he was "not going to go negotiate against" himself. Doc. 64-2, Knight Depo. 103:2-7. 7 IL implies in Paragraph 44 calls for the concept of why Mr. Knight **could not** have spoken, and ultimately did not speak, with Mr. Wilson.

45. Denied. Mr. Knight is unaware of any written communications from Mr. Wilson stating that the closings could not proceed. Doc. 64-2, Knight Depo. 104:4-14.

46. Mr. Knight Admits that he did not appear at closing. Mr. Knight Denies the characterization that he "failed to appear at the closing." Mr. Knight Admits that he later issued a notice of termination.

47. Admitted.

48. Admitted.

49. Admitted.

50. Denied. Mr. Wilson had not prepared the easements or transmitted them to Mr. Knight even as of June 2, 2021. Doc. 64-3, Wilson Depo. 55:13-56-8; 56:16-24. Moreover, even the form of the easements that Mr. Wilson transmitted to Mr. Knight on June 2, 2021 remained in draft form including the name Thor James on the documents because what Mr. Wilson was transmitting were forms that he intended to begin working from, not actual easements, which demonstrates

that Mr. Wilson had not even provided Mr. Thatcher or 7 IL with easements as of June 2, 2021, **after** the June 1, 2021 closing date. Doc. 64-3, Wilson Depo. 56:1-24.

    51.    Admitted.

    52.    Admitted.

    53.    Admitted.

    54.    Admitted.

    55.    Admitted.

    56.    Admitted.

    57.    Denied. Mr. Knight is not a legal professional. He has long since maintained the position that 7 IL breached the River Heights PSA through the failure of his attorney, Mr. Wilson, to prepare the contracted easements on or before June 1, 2021. *See Generally* Mr. Knight's Motion for Summary Judgment [Doc. 63] and the entirety of his Statement of Undisputed Facts contained therein [Doc. 63-1].

    58.    Admitted.

    59.    Admitted.

**STATEMENT OF ADDITIONAL UNDISPUTED FACTS**

As a preliminary matter, Mr. Knight notes that all of the below stated facts appear in and are identical to Mr. Knight's Statement of Undisputed Facts [Doc. 63-1] which was filed contemporaneously with and in support of Mr. Knight's Motion for Summary Judgment [Doc. 63]. These are represented here out of an abundance of caution, but not with the intention of causing the Court any further duplicative reading.

**A.   253 River Heights Road Deal.**

1.   On March 14, 2021, Gary Knight and John Thatcher (as managing member of 7 IL Properties, LLC) executed a purchase and sale agreement under which 7 IL Properties, LLC would purchase that property identified as 253 River Heights Road, Blue Ridge, Fannin County, Georgia 30513 (hereafter, "253 River") from Mr. Knight pursuant to the terms of said agreement (hereafter, the "253 River PSA"). Attachment A, Deposition of John Thatcher, 21:20-25 & Exhibit A.

2.   Attorney Terry L. Wilson was the closing attorney for the 253 River PSA and the 92 Fish Trap PSA (addressed *infra*). Attachment B, Deposition of Terry L. Wilson, 10:9-10.

3.   Since both deals were cash deals, Mr. Wilson represented the Buyer, 7 IL, in both deals. Wilson Depo. 10:22-11:2; 14:18-21; 15:1-3.

4. The closing date for the 253 River PSA was June 1, 2021. Wilson Depo. 14:1-5.

5. 253 River abuts the Toccoa River. Thatcher Depo., Exh. A, p. 11.

6. The road access to 253 River and the Toccoa River access to 253 River are separated by the Blue Ridge Scenic Railway (hereafter, the "Railroad"). Thatcher Depo., Exh. A, p. 11.

7. 253 River does not have its own access to cross the Railroad. Wilson Depo. 22:24-23:22.

8. The "home" on 253 River is across the Railroad from the Toccoa River. Thatcher Depo., Exh. A, p. 11.

9. Without access to cross the Railroad, inhabitants and/or guests in the home on 253 River would not be able to access the Toccoa River. Thatcher Depo., Exh. A, p. 11.

10. 253 River may be seen on the plat within the 253 River PSA as Lot 15. Thatcher Depo., Exh. A, p. 1, 13.

11. Mr. Knight also owns Lot 13 on this plat.

12. Through Lot 13, Mr. Knight owns access to cross the Railroad to access the Toccoa River. Wilson Depo. 26:7-29:6.

13. For this reason, 7 IL negotiated an easement with Mr. Knight to allow the inhabitants and/or guests of 253 River (Lot 15) to utilize the Railroad access on Lot 13. Thatcher Depo. 23:17-24:16.

14. Without such an easement, guests of 7 IL at 253 River would have been unable to cross the Railroad to access the Toccoa River. Wilson Depo. 60:1-15.

15. 7 IL deemed this easement necessary to purchase 253 River. Thatcher Depo. 24:14-16.

16. As a result, Amendment to Agreement 3 (previously, erroneously marked as 2 in the 253 River PSA) was drafted (hereafter, "253 River Amendment 3"). Thatcher Depo., Exh. A, pp. 19-20.

17. 253 River Amendment 3 was executed by the Parties on April 5, 2021. Thatcher Depo., Exh. A, p. 20.

18. 253 River Amendment 3 states in part that (a) "Buyer to maintain $5 Million liability insurance for railroad crossing in order to use easements," and (b) "community well agreement / easements to be written by Licensed Georgia attorney at or prior to closing." Thatcher Depo., Exh. A, p. 20.

19. Mr. Wilson was aware of the easement issues on the 253 River and 92 Fish Trap properties (including well water, river access and footpaths) from a prior

closing on a property previously owned by Mr. Knight which had been sold to a fellow named Thor James. Wilson Depo. 19:19-23.

20. Mr. Thatcher stated that he did not want any properties without proper easements. Thatcher Depo. 104:5-10.

21. As of May 28, 2021, (as stated in a text message to Dee McBee, 7 IL's realtor), Mr. Thatcher had not yet seen the easements and wanted to get the wording correct. Thatcher Depo. 109:14-21, Exh. O, p. 17.

**B.  92 Fish Trap Road Deal.**

22. On April 2, 2021, Gary Knight and John Thatcher (as managing member of 7 IL Properties, LLC) executed a purchase and sale agreement under which 7 IL Properties, LLC would purchase that property identified as 92 Fish Trap Road Road, Blue Ridge, Fannin County, Georgia 30513 (hereafter, "92 Fish Trap") from Mr. Knight pursuant to the terms of said agreement (hereafter, the "92 Fish Trap PSA"). Thatcher Depo., 37:22-38:1 & Exh. F.

23. On April 5, 2021, the Parties executed Amendment 1 to the 92 Fish Trap PSA, which required that "river easements and community well (water) maintenance agreements … be drafted by [a] Georgia licensed attorney prior to or at closing." Thatcher Depo., Exh. F, p. 20.

24. 7 IL wanted to have the easements on the 92 Fish Trap property drafted by a licensed attorney, and wanted written easements for well water and for access to the Toccoa River. Thatcher Depo., 41:9-25; 46:16-25.

25. According to Mr. Thatcher, the Parties had agreed to include a footpath easement in the 92 Fish Trap PSA. Thatcher Depo. 83:18-25.

26. The 92 Fish Trap PSA does not specifically discuss any footpath easement. Thatcher Depo. 84:21-85:11.

27. The 92 Fish Trap PSA contemplated the purchase of Lot 10 on the plat enclosed within. Thatcher Depo., Exh. F, p. 1, 17.

28. The plat within the 92 Fish Trap PSA was not created by Mr. Knight and preexisted Mr. Knight's ownership of 92 Fish Trap. Thatcher Depo., 40:13-22.

29. 7 IL has never seen a draft version of the easements required by Amendment 1 to the 92 Fish Trap PSA. Thatcher Depo., 42:15-43:18.

30. This is despite the fact that Mr. Thatcher emailed Mr. Knight on April 2, 2021 advising Mr. Knight that the easements were "too vague," that he "thought an attorney was going to write" the easements, that an easement "map would help in the future," that he did not want to insure the easement, and that a defined easement needed to be drawn regarding well water. Thatcher Depo., 44:16-46:5, and Exh. G.

31. This is also despite the fact that 7 IL and Mr. Thatcher believed that these easements needed to be drafted before closing. Thatcher Depo. 47:19-22.

32. This Amendment to the 92 Fish Trap PSA was extremely vague to the point of needing clarification as to what was agreed, and it was never clarified before closing. Thatcher Depo. 50:8-18.

33. Mr. Thatcher has no reason to believe that Mr. Knight knew there was an error with the plat surrounding 92 Fish Trap prior to April 2, 2021. Thatcher Depo. 53:16-23.

34. Neither 7 IL, nor Mr. Thatcher ordered a survey of either property. Thatcher Depo. 57:2-7; 57:19-21.

35. While 7 IL was in the process of purchasing 92 Fish Trap Road from Mr. Knight, a fellow named Gary Branch was in the process of purchasing the neighboring property, 100 Fish Trap Road from Mr. Knight. Attachment C, Deposition of Gary Branch, 6:11-7:17.

36. 100 Fish Trap Road is marked on the plat as Lot 9. Branch Depo. 7:18-23.

37. On April 18, 2021, at Mr. Branch's request, Mr. Knight and Mr. Branch entered an Amendment 3 to their own agreement for the purchase of 100 Fish Trap Road requiring a survey of Lot 9 to be completed at Mr. Branch's expense. Branch Depo. 8:11-17; 10:23-11:2, Exh. A.

38. Mr. Branch was invoiced for and ultimately paid for the survey. Branch Depo. 21:1-21; 22:5-8, Exh. D.

39. The results of the survey determined that there was an encroachment, which was later marked as Lot 10A on the survey (hereafter, the "Encroachment"). Branch Depo. 29:24-30:22, Exh. C.

40. On May 31, 2021, the preliminary survey, ordered by Mr. Branch, was completed by the surveyors. Branch Depo., Exh. C.

41. On June 1, 2021, the survey was recorded. Branch Depo., Exh. D.

42. The Encroachment was a property line cut wherein 92 Fish Trap Road sliced into the driveway for 100 Fish Trap Road and wherein part of a retaining wall also stretched over the boundary line per the original plat. Branch Depo. 28:9-29:1.

**C. Attempted Closing.**

43. Mr. Wilson was the licensed Georgia attorney who was drafting the easements for both properties. Wilson Depo. 52:5-8.

44. Mr. Wilson was the only licensed Georgia attorney involved in the 253 River PSA and 92 Fish Trap PSA. Thatcher Depo. 106:12-18.

45. On April 13, 2021, Mr. Knight emailed Mr. Wilson's assistant Kristin Chancey regarding the negotiated easements for both properties. Wilson Depo. 33:20-34:14, Exh. 3, p.1.

46. On May 26, 2021, Mr. Knight's realtor, Brian White, emailed Mr. Wilson stating that he had "just got off the phone with Gary Knight and he asked if [Mr. White] would check in on the easement that [Mr. Wilson was] drafting for 92 and 100 Fish Trap," and further that Mr. Knight "mentioned he [wasn't] comfortable reviewing day of closing and would like to have time to review beforehand." Wilson Depo. 37:19-20, Exh. 4, p. 1.

47. Later on May 26, 2021, Mr. Wilson responded that he spoke with Mr. Knight at length and planned to get the easements to Mr. Knight by May 27, 2021. Wilson Depo. 39:13-24, Exh. 4, p. 1.

48. On May 27, 2021, in response to a request for the draft easements by Mr. Thatcher, Mr. Wilson sent Mr. Thatcher draft easements for the Thor James property. Thatcher Depo., Exh. L.

49. According to Mr. Thatcher, Mr. Thatcher did not see the draft easements until May 31 or June 1, 2021. Thatcher Depo. 74:5-76:9; 77:18-23.

50. At 6:54pm on June 1, 2021, Mr. White emailed Mr. Wilson asking for draft easements which had not yet been completed. Wilson Depo., Exh. 3, p. 4.

51. At 7:52am on June 2, 2021, Mr. Wilson responded to Mr. Knight with easements for a different property that was not part of either the 253 River PSA or the 92 Fish Trap PSA. Wilson Depo., Exh. 3, p. 4-12.

52. The draft easements that Mr. Wilson sent to Mr. Knight and Mr. White on June 2, 2021 (the day after scheduled closing) were incomplete and involved non-party Thor James who was not expected to be at closing on June 1, 2021. Wilson Depo. 55:13-56-8.

53. Mr. Wilson had neither drafted, nor presented to Mr. Knight any easement for the 253 River PSA or 92 Fish Trap closing on or before June 1, 2021. Wilson Depo. 56:16-24.

54. Mr. Wilson had provided zero easements by June 1, 2021. Wilson Depo. 66:14-67:6.

55. According to Mr. Wilson, at the closing table on June 1, 2021, in response to the Encroachment, Mr. Thatcher was negotiating saying that he would close that day if the purchase price for 92 Fish Trap was reduced by $50,000.00. Wilson Depo. 68:13-69:12.

56. According to Mr. Thatcher, the price reduction was to be $25,000.00. Thatcher Depo. 66:18-25.

57. Mr. Thatcher did not state that he was willing to close the deals as agreed. Wilson Depo. 73:3-6.

This 5th day of December, 2023.

>/s/ Frank G. Podesta
> Frank G. Podesta
> GA Bar No. 496530
> fpodesta@fgplaw.com
>
> 555 Sun Valley Drive
> Suite N-3
> Roswell, Georgia 30076
> 678.677.5143 (voice)
> 678.222.0123 (facsimile)
> *Attorneys for Gary Knight*