IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| 7 IL PROPERTIES, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| | ) 2:21-cv-226-RWS |
| GARY KNIGHT, | ) |
| Defendant. | ) |

## SUPPLEMENTAL RESPONSE IN PARTIAL OPPOSITION TO MOTION FOR CONTEMPT

Gary Knight hereby files this Supplemental Response in Opposition to 7 IL Properties, LLC's ("7 IL") Motion for Contempt [Doc. 145] the Supplemental Brief thereto [Doc. 156], as follows:

## DISCUSSION

Previously, 7 IL's Motion concerned its incorrect claims that Knight failed to comply with this Court's December 4, 2024 Judgment [Doc. 134] by failing to close the relevant properties on or before March 19, 2025. The Motion, which still stands, is flawed for two reasons: (a) that the plain language of the Judgment required that the Parties close the properties *no sooner than March 19, 2025*, and (b) because Knight had offered to close the properties at a mutually convenient time within the Ordered deadline.

Since the filing of the Motion, this Court Ordered the Parties to close the Properties no later than 3:00pm on Friday, May 30, 2025 [Doc. 152]. The Parties closed the Properties a few hours thereafter because the funds were not transmitted to the closing attorney on time. If there has been any violation of any Order of this Court, it occurred by 7 IL failing to timely close due to lack of funds. Knight had been ready to close at 3:00pm on May 30, 2025.

Instead, 7 IL now seeks to have imaginary orders of the Court enforced against Knight over gripes that at least fall outside of any Order of this Court, and generally are entirely superfluous. These will be addressed below.

Again, to save judicial economy, Knight continues to concede 7 IL's statement of the legal standard for civil contempt, as set forth in Section III.A of its original Motion. Knight maintains that there is no need for any inquiry into the available remedies for civil contempt given the complete lack of any violation of this Court's Judgment [Doc. 134], or Order Setting Contempt Hearing [Doc. 156], or any other Order of this Court for that matter.

**A.     The Inspections Were Completed Timely.**

The first issue raised by 7 IL in the Supplemental Brief is the concept that Knight failed to allow inspection of the Properties in a timely fashion. There is no point in getting in a series of emails and phone calls and Knight's mother's medical events (although Knight vigorously disputes the claim that he, and not 7 IL's

inspector, was at fault for the timing of the inspections) for two reasons: (a) the inspections occurred and the Properties closed on May 30, 2025; and (b) **there is no Order requiring a specific date for inspection**.

Even if, for the sake of argument, 7 IL was right that Knight was exclusively at fault for some delay in the inspections, and even if Knight did so out of mere spite, insidiously fabricating some false legend that his dear sick mother was unwell, it would be of absolutely no moment whatsoever, because the Court **never** Ordered a specific date for closing. If a hearing is necessary, Knight can bring proof of his whereabouts and that his mother was indeed hospitalized in Texas, but perhaps we should pretend for a moment that he was lying all along to annoy 7 IL. The response of the Court could not be to hold him in contempt for not being very nice, or even not being very professional. Contempt powers are reserved for the violation of judicial orders.

**B.  Knight's Easement Agreement Between Knight And Thor James Does Not Violate Any Order Of This Court.**

On March 17, 2025, Knight recorded a deed between himself and Thor James in favor of James providing James with certain access to Lots 14 and 15 in the Toccoa Heights District which is the subject of this case ("James Deed"). The James Deed came with certain restrictions as to use of these various points of access, which are reasonable, and designed to avoid overuse and misuse by

partying friends of guests on the property. No component of this James Deed violates any Order of this Court, including, but not limited to the Judgment [Doc. 134] or the Order Setting Contempt Hearing [Doc. 156]. Without violating the language of any Order, contempt cannot be found.

### 1. *The James Deed Was Filed Timely, A Month And A Half Before The Date Required By This Court.*

7 IL correctly points out in its Supplemental Brief that the River Heights PSA requires the drafting of an easement agreement granting "access to the river for lots 14, 15, and 16" which was to be drafted "at or before closing." *See* Supp. Brief, pp. 4-5. Knight's filing of the James Deed prior to May 30, 2025 allows him to remain compliant with the direction to have such a deed filed at or before closing. So, getting this done on March 17, 2025 avoids any contempt as far as timing is concerned. He would not have been in contempt unless he filed the James Deed too late, *ie.* on May 31, 2025, or not at all.

### 2. *The James Deed Does Not Violate Any Order.*

7 IL goes on to correctly note that the required easement must serve the "property owners of lot 14, 15, 16" for ATV access and the "owners, tenants/guests" for the footpath. *See* Exh. I to Supp. Brief [Doc. 156-1]. Moreover, these access points would be "as discussed with buyer and seller on

4

3/30/21." *See* Exh. I to Supp. Brief [Doc. 156-1]. ATV access was restricted to property owners only. *Id.*

7 IL complains that the James Deed restricts the use of the footpaths from property owners and guests of the property owners to property owners and overnight guests of the property owners. 7 IL ignores the fact that these are vacation rental properties, not fraternity houses. 7 IL further ignores the provision in Amendment 3 that specifically states that these access points would be "as discussed with buyer and seller on 3/30/21." *See* Exh. I to Supp. Brief [Doc. 156-1].

During the aforementioned discussions, the Parties agreed and understood that these were properties to be used by the owners and their guests, which were invariably overnight guests. This is implicit, if nothing else, by virtue of the fact that these are cabin rentals of the VRBO and higher end Air BNB bent. They have always been cabin rentals of this sort, managed by Knight's property management company, and they are currently being managed in such a form by 7 IL's group.

No order has been violated in creating the James Deed, but this bizarre complaint leads to wondering. What exactly does 7 IL want to do on Knight's remaining properties? Is 7 IL seeking to organize a march of day guests, who are not residing overnight, across Knight's footpaths? Holding a 100 person toga party

5

across Knight's remaining property was never discussed during the March 30, 2021 discussion among the Parties.

In a similarly misguided complaint, 7 IL complains that the use of the footpaths is restricted to just the owners and guests of Lots 14, 15 and 16, which is exactly what is contracted for. *See* Supp. Brief, p. 6. Amendment 3 calls for the grant of said access to the owners and guests of Lots 14, 15 and 16. *See* Exh. I to Supp. Brief [Doc. 156-1]. It does not grant access to the owners, guests, buddies, neighbors, best friends, sons-in-law, middle school teachers and primary care physicians of the owners. If 7 IL wants Mr. Thatcher's mother to be able to use the footpaths, he simply needs to have her be an overnight guest of the River Heights Property.

Most importantly, however, none of this violates the Orders of this Court. 7 IL is attempting to use this Court as a vehicle to litigate a deed dispute that is not under the jurisdiction of this Court at this time. No Order of this Court, anywhere, prevents the James Deed. It truer to state that the Judgment requires it.

### 3. *The James Deed's Language Regarding The Railroad Crossing Does Not Violate Any Order Of This Court.*

7 IL's complaints regarding paragraph 4 of the James Deed, similarly, present no grounds for contempt. 7 IL claims that "[u]nder Amendment 3, the easement was required to provide access over the railroad crossing sufficient for

the use and enjoyment of the River Heights property, consistent with prior usage and benefitting tenants, guests, invitees, and other lawful users of the property." *See* Supp. Brief, p. 7. This is imaginary.

The word "invitees" and the phrase "other lawful users of the property" are starkly absent from Amendment 3. *See* Exh. I to Supp. Brief [Doc. 156-1]. Amendment 3 is also completely silent on the concept of the railroad being accessible "consistent with prior usage" of the owners and guests. *Id.* Moreover, 7 IL presents zero evidence of what it imagines "prior usage" to have been.

The James Deed does not restrict any reasonable usage of the paths. Unless 7 IL really wants to hold its toga party, bizarrely flooding across the railroad tracks, there is nothing to complain about. The James Deed clearly allows for owners and guests to cross the railroad tracks, in accordance with Amendment 3.

Beyond this, it should be noted that the railroad crossing is not guaranteed … by the railroad. The crossing is a tenuous privilege, currently available to Knight. This privilege is at once subject to the whims of the railroad and critical to the value of Knight's property. Any excessive use of the railroad crossing, including 7 IL's forthcoming toga party, risks the elimination of the railroad crossing by the railroad. The James Deed simply places the Knight and James on notice of the ramifications of misusing the railroad crossing.

As the Court is well-aware, railroad crossings are dangerous and never intended for rowdy exercises. This is memorialized in Amendment 3, which requires 7 IL "to maintain $5Million liability insurance for rail[]road crossing in order to use the easements." *See* Exh. I to Supp. Brief [Doc. 156-1]. As per Amendment 3, just 7 IL is required to maintain a $5,000,000.00 insurance policy to use the crossing. That is no paltry sum.

The James Deed explains that the excessive crossing of the railroad by groups larger than those which could reasonably sleep in the property would be dangerous to life, limb and the existence of the crossing itself, well in line with the enormous insurance requirement, and that such conduct could result in serious damages, including the elimination of the railroad crossing by the railroad itself.

Nonetheless, even if none of this were true, and even if Amendment 3 stated everything 7 IL wishes it said, the James Deed would not violate any Order of this Court, and as a result, contempt would not be available.

4.   *Amendment 3 Does Not Prohibit Remedies.*

As touched upon above, Amendment 3 does not expressly prohibit remedies. Moreover, all of the remedies described in the James Deed would be available to Knight in the event of the conduct described. Oddly, 7 IL complains that Knight seeks to avoid "loud, abusive, or disruptive language or behavior," over a railroad crossing. That is not something civilized people worry about becoming liable for.

8

7 IL may wish to consider restricting its guest list as aggressively as it seeks to push this baseless Motion. Nonetheless, even if it were reasonable to conduct one's self with abusive behavior on a railroad crossing, the James Deed would not constitute a violation of any Court Order. Contempt is not warranted.

**C.    The Inspection Report And Repair Issue Is Not Proper Here.**

While Knight appreciates 7 IL's concession that it received the inspection reports on May 15, 2025 (15 full days before closing), 7 IL is misunderstanding its potential remedies for the alleged improprieties. While Knight contends, and is happy to present photographs demonstrating, that the Properties were in excellent condition at the time of closing (and for the past five years), there would be no possible remedy of contempt if 7 IL's claims were true. The available remedies for issues with the inspection of a property would have been either to (a) decline to purchase, or (b) sue for damages. *See* Order Granting Supplemental Briefing, Note 1 (noting that "when a deed is delivered and accepted, the purchase and sale agreement generally merges into the deed and all antecedent agreements are superseded, save for certain collateral agreements").

As 7 IL admits, there was correspondence between counsel for the Parties (Alicia Argo for Knight) disputing items that 7 IL wanted to have addressed. There was no agreement. Absent the agreement, 7 IL closed, waiving its future potential remedies.

There is no provision in any Order of this Court requiring Knight to resolve every whim and complaint of 7 IL as to the condition of the Properties before closing. If 7 IL really feels that it has a claim, it should file a separate suit. This is not the venue.

**D.     There Are No Contempt Issues Or Any Other Issues Before This Court.**

All conditions of the closing were completed at the time of closing. 7 IL refers to Wilson Pruitt, LLC's form, specifically the section "Survival of Agreement" to attempt to resurrect a claim on the issue of merger, which states, in relevant part that:

> As part of the consideration of this sale, the contract between the parties is by reference incorporated herein and made a part hereof. Only the terms and conditions contained therein that have not been completed by the closing, shall survive the closing and shall not merge upon delivery of the deed.

There are no other agreements to complete some later task anywhere in 7 IL's 423 page treatise on this case.

Instead, 7 IL insists that because it had "made [it] clear in follow-up correspondence that the matter was not concluded," somehow its allegedly remaining issues survive. They do not. Follow-up emails demanding unagreed benefits or remedies do not constitute "terms and conditions contained therein that have not been completed." There is no basis for this in law, and there is not basis for this in fact.

10

Beyond this, to attempt to import the remedy of contempt in such an instance would be patently absurd. 7 IL's only theoretical redress would be a separate suit, which would be doomed to fail, given the delivery of the deed.

## CONCLUSION

The Properties have closed. The deeds have merged. There are no viable available remedies to 7 IL, and there are no available remedies before this Court. No act or omission of Knight rises anywhere near the level of contempt of any Order issued by this Court.

WHEREFORE, this Court should Deny 7 IL's Motion for Contempt [Doc. 145], and allow this case to finally close.

Respectfully submitted, this 24th day of July, 2025.

        FGP LAW, LLC

        /s/ Frank G. Podesta
        Frank G. Podesta
        Georgia Bar No. 496530
        fpodesta@fgplaw.com

        555 Sun Valley Drive
        Suite N-3
        Roswell, Georgia 30076
        678.677.5143 (voice)
        678.222.0123 (facsimile)
        *Attorneys for Gary Knight*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Supplemental Brief and Response in Opposition to Motion for Contempt** was prepared using 14 Point Times New Roman Font, and that on July 24, 2025, I filed the foregoing with the Clerk of Court, and served via same on all counsel of record via this Court's CM/ECF electronic filing system.

Respectfully submitted, this 24th day of July, 2025.

                FGP LAW, LLC

                /s/ Frank G. Podesta
                Frank G. Podesta
                Georgia Bar No. 496530