**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

7 IL PROPERTIES, LLC,

　　　　Plaintiff,

　　　　v.

GARY KNIGHT,

　　　　Defendant.

Civil Action No.

2:21-cv-226-RWS

## ORDER

This case comes before the Court on Plaintiff 7 IL Properties, LLC's

("7 IL") Motion for Contempt against Defendant Gary Knight ("Mr. Knight").

[Dkt. 145]. After reviewing the record, the Court enters the following Order.

## BACKGROUND

On October 18, 2021, 7 IL initiated this action against Mr. Knight. [Dkt. 1].

On November 15, 2021, Mr. Knight filed his Answer and Counterclaim, asserting

the following counterclaims against 7 IL: breach of contract (Count I),

[Dkt. 7, at ¶¶ 77–84]; declaratory judgment (Count II), [id. at ¶¶ 85–88]; and

attorneys' fees (Count III), [id. at ¶¶ 89–91]. That same day, 7 IL filed its First

Amended Complaint, asserting the following claims: specific performance (Count

I), [Dkt. 8, at ¶¶ 31–38]; breach of warranty of title (Count II), [id. at ¶¶ 39–44]; negligent misrepresentation (Count III), [id. at ¶¶ 45–54]; breach of contract (Count IV), [id. at ¶¶ 55–58]; and attorneys' fees (Count V), [id. at ¶¶ 59–63]. On December 6, 2021, 7 IL filed its Answer to Mr. Knight's Counterclaims. [Dkt. 10]. And on December 16, 2021, Mr. Knight filed his Answer to 7 IL's First Amended Complaint. [Dkt. 11].

On October 17, 2023, 7 IL and Mr. Knight filed their respective cross-motions for Summary Judgment. [Dkts. 65, 63]. 7 IL and Mr. Knight each filed a response brief, [Dkts. 71, 70], and a reply brief, [Dkts. 75, 76]. On January 12, 2024, Mr. Knight filed an unopposed Motion for Oral Argument. [Dkt. 77].

On February 7, 2024, and April 26, 2024, the Court issued two orders awarding 7 IL specific performance as to the Fish Trap property but leaving to the jury whether 7 IL substantially complied with its obligations under the River Heights purchase and sale agreement ("PSA"). [Dkts. 78, 90]. In September 2024, the Court held a three-day trial where a jury found that 7 IL substantially complied with its obligations under the River Heights PSA, was not in material breach, and, consequently, was entitled to specific performance. [Dkt. 122, at ¶ 1]. Thereafter, on December 4, 2024, the Court directed the Clerk to enter a judgment ordering

Mr. Knight to close on the sale of the River Heights and Fish Trap properties. [Dkt. 134]. The Clerk entered a judgment accordingly. [Dkt. 135].

On March 20, 2025, 7 IL moved to hold Mr. Knight in contempt for his alleged failure to close on both the River Heights and Fish Trap properties post-judgment. [Dkt. 145]. On May 6, 2025, the Court held a telephonic conference with counsel from both parties, encouraging them to conduct property inspections. [Dkt. 150]. As of May 12, 2025, the inspections had not occurred. [See Dkt. 156-1, at 9–10]. In response, the Court directed the parties, through e-mail, to complete the inspections by end of day on May 13, 2025. [Id. at 8]. The parties appear to have completed the inspections on May 14, 2025. [See Dkt. 156, at 3; Dkt. 156-1, at 7].

On May 27, 2025, however, 7 IL informed the Court that Mr. Knight continued to fail to comply with the Court's judgment in the following respects: (i) failure to repair items that Mr. Knight agreed to repair; (ii) the presence of "additional deficiencies" due to "years of deferred maintenance"; (iii) a "likely structural issue with retaining walls"; and (iv) the recording of a post-judgment easement, "executed in bad faith," that impairs title to the River Heights property. [Dkt. 156-4, at 7–8]. These "outstanding issues" revolve around Mr. Knight's

(1) repair obligations under both PSAs, [Dkt. 65-3, at 17; Dkt. 65-4, at 14], and

(2) his easement obligations under the River Heights PSA, [Dkt. 65-3, at 16].

With these "outstanding issues" in mind, the Court, on May 29, 2025, issued an order to complete the *closing* of the River Heights and Fish Trap properties no later than 3:00 p.m. on Friday, May 30, 2025. [Dkt. 152]. The order essentially afforded the parties three alternatives: (1) insist on compliance with all terms of the PSAs and delay closing (subject to the party at fault for the property not closing being held in contempt); (2) resolve the "outstanding issues" and close; or (3) reserve the "outstanding issues" and close. Choosing option (2) or (3) would effectively conclude the present case. Option (1) would have required further contempt proceedings. [See Dkt. 152].

The parties appear to have closed on both properties around 4:30 p.m. on May 30, 2025—an hour or so past the Court's deadline. [Dkt. 156-4, at 39]. In so doing, the parties effectively provided that all issues regarding noncompliance with the PSAs would survive the closing, thus reserving the parties' rights to seek relief in a new proceeding:

> *Survival of Agreement*. As part of the consideration of this sale, the contract between the parties is by reference incorporated herein and made a part hereof. Only the terms and conditions contained therein that have not been completed by the closing, shall survive the closing and shall not merge upon delivery of the deed.

4

[Dkt. 156-4, at 28–29].

Despite the closing, 7 IL maintains, however, that Mr. Knight engaged in "post-order" misconduct, pointing specifically to an easement recorded *after* the Clerk's entry of judgment, but *before* the closing, that added "additional property restrictions and obligations that varied significantly from [the] purchase and sale agreement." As a result, 7 IL filed a Motion for Leave to File Supplemental Briefing, [Dkt. 154], in support of its pending Motion for Contempt, [Dkt. 145].

On June 9, 2025, the Court granted 7 IL's motion for supplemental briefing and directed the parties to address two questions: (i) whether 7 IL is entitled to any relief under the PSAs given the execution of the deeds; and, if so (ii) what kind of relief 7 IL is entitled to. [Dkt. 155, at 3–4]. On June 23, 2025, 7 IL filed its opening brief. [Dkt. 156]. On July 24, 2025, Mr. Knight filed his response brief. [Dkt. 159]. And on August 7, 2025, 7 IL filed its reply brief. [Dkt. 160].

## DISCUSSION

### I.   Legal Standard

"A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992). "The clear and convincing evidence

must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1296 (11th Cir. 2002). "Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply." Commodity Futures, 950 F.2d at 1529. "The burden shifts back to the initiating party only upon a sufficient showing by the alleged contemnor. The party seeking to show contempt, then, has the burden of proving ability to comply." Id.

In the civil contempt context, "[c]lear and convincing evidence is a demanding but not insatiable standard, requiring proof that a claim is highly probable. 'Highly probable' is a standard that requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt." White-Lett v. Shellpoint Mortg. Servicing, 2024 WL 3636285, at *7 (N.D. Ga. July 3, 2024) (quoting Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016)); see also, e.g., Eaconomy, LLC v. Auvoria Prime, LLC, 482 F. Supp. 3d 1030, 1033 (E.D. Cal. 2020); Laborers Loc. Union Nos. 472 & 172 v. Lucas Constr. Grp., Inc., 2024 WL 3568735, at *3 (D.N.J. July 29, 2024); Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines, 1995 WL 472705, at *8–9

6

(N.D. Ill. Aug. 8, 1995); <u>John Wiley & Sons, Inc. v. Kirtsaeng</u>, 2009 WL 3817407, at *3 (S.D.N.Y. Nov. 9, 2009); <u>In re SportsStuff, Inc.</u>, 2010 WL 3956362, at *8 (D. Neb. Oct. 8, 2010); <u>Kroger Ltd. P'ship I Mid-Atlantic Mktg. Area v. United Food & Com. Workers Union, Loc. 400</u>, 2019 WL 13297404, at *2 (E.D. Va. Sep. 10, 2019); <u>Feliciano v. Vila</u>, 2007 WL 4404730, at *11 n.3 (D.P.R. Dec. 13, 2007); <u>Coomer v. Make Your Life Epic LLC</u>, 2024 WL 3340090, at *5 (D. Colo. June 14, 2024).

## II.    Analysis

According to 7 IL's briefs, Mr. Knight's alleged violations arise from two categories of conduct: (1) Mr. Knight's delays in facilitating inspections and closing on the River Heights and Fish Trap properties; and (2) Mr. Knight's breach of the terms of the River Heights and Fish Trap properties by recording an easement and failing to repair certain defects. The Court addresses each, in turn.

### A.    Mr. Knight's Delays

First, 7 IL contends that Mr. Knight violated the Court's December 4, 2024 Order to close on the sale of the River Heights and Fish Trap properties "in not less than 105 days from entry of Judgment." [<u>See</u> Dkt. 145, at 5–7]. 7 IL interpreted the phrase "not less than" to mean "no later than," requiring the closings *before* March 19, 2025. [<u>See</u> <u>id.</u>]. Mr. Knight interpreted the phrase "not less than" to

7

mean "no sooner than," requiring the closings *after or on* March 19, 2025. [Dkt. 148, at 2–3]. In light of these competing but reasonable interpretations, the Court cannot find by clear and convincing evidence that its December 4, 2024, order was "clear and unambiguous," Riccard, 307 F.3d at 1296, and, consequently, cannot hold Mr. Knight in contempt for violating that Order. Cf. CSX Transp., Inc. v. Leggett, 2008 WL 11409927, at *4 (N.D. Ga. Nov. 13, 2008) ("Although the Court finds these transfers to violate the Preliminary Injunction, the Court determines not to hold Chris Leggett in contempt because CSX has not shown through clear and convincing evidence that the Order was unambiguous as it applied to the transactions.").

Next, 7 IL appears to argue that Mr. Knight violated the Court's May 13, 2025 directive to complete inspections of the River Heights and Fish Trap properties. [See Dkt. 156, at 2–3]. The Court directed the parties to complete the inspections by the end of day on May 13, 2025, but did so informally rather than through a "valid and lawful" order. [Dkt. 156-1, at 8–9]. And because the Court's directive was not in the form of a "valid or lawful" order, Riccard, 307 F.3d at 1296, the Court cannot hold Mr. Knight in contempt for violating that directive.

Finally, 7 IL argues that Mr. Knight violated the Court's May 29, 2025 Order directing the parties to close on the Fish Trap and River Heights properties.

[Dkt. 156, at 12–16]. The Court ordered the closings to take place by 3:00 p.m. on May 30, 2025; but the record reflects, and 7 IL does not deny, that the closings occurred around 4:30 p.m.—roughly an hour or so late. [Dkt. 156-4, at 39 ("I understand that the properties have closed.")]. Although the delay is regrettable, the "Court finds that it would be inappropriate to hold Defendant in contempt for such a minor violation." Hoffer v. Jones, 2018 WL 11303803, at *1 (N.D. Fla. Sep. 7, 2018); see also CSX Transp., 2008 WL 11409927, at *4 ("The Court further finds that the technical violations are de minimus and do not justify a finding of contempt."); cf. Federal Trade Commission v. Roca Labs, Inc., 2017 WL 131574, at *2 (M.D. Fla. Jan. 13, 2017) ("In light of the production made by Peters, even if a few days late, I find no basis for contempt sanctions . . . ."); Doe 1 v. Francis, 2006 WL 8444030, at *6 (N.D. Fla. May 8, 2006) ("[T]his Court refuses to exercise its contempt powers solely for the sake of exercising them on what amounts to, at *most*, an inadvertent and trivial violation of an unwritten and ambiguous court order that did not prejudice Defendants.").

### B.     Mr. Knight's Obligations Under the PSAs

7 IL also contends that both Mr. Knight's actions and omissions violated the River Heights and Fish Trap PSAs and, therefore, the Court's December 4, 2024 and May 29, 2025 Orders to close on the properties. First, 7 IL points to

Mr. Knight's recording of an easement between him and James Thor in Deed Book 1642, Page 278 of the Fannin County records (the "Thor Easement"), [Dkt. 156-1, at 12–16], as deviating from amendment # 3 of the River Heights PSA and, therefore, the Court's orders. [Dkt. 156, at 4–10]. Second, 7 IL points to Mr. Knight's failure to complete repairs required under the River Heights and Fish Trap PSAs, [Dkt. 65-3, at 17 (River Heights); Dkt. 65-4, at 14 (Fish Trap)], as violating the PSAs and, therefore, the Court's orders. [See Dkt. 156, at 10–13].

Whatever the case may be, the Court finds that these issues were properly reserved under the Court's May 29, 2025 Order and, therefore, cannot provide the basis for a contempt proceeding. Essentially, the Order presented the parties with three alternative courses of action: (1) insist on compliance with all terms of the PSAs and delay closing (subject to the party at fault for the property not closing being held in contempt); (2) resolve the "outstanding issues" and close; or (3) reserve the "outstanding issues" and close. The parties chose option (3), concluding the case but reserving any "outstanding issues" for a later proceeding. Thus, any potential violations of the PSAs were subsumed into the Court's May 29, 2025 Order and could no longer serve as the basis for contempt.

Rather than resolving them in a contempt proceeding, the Court believes that these issues—(i) the effect of the Thor Easement on Mr. Knight's obligations

under amendment # 3 of the River Heights PSA, and (ii) Mr. Knight's failure to complete any agreed-upon repairs pursuant to both the River Heights and Fish Trap PSAs—are better left reserved for a separate proceeding based on breach of contract. As a practical matter, the resolution of these "outstanding issues" will likely require the development of substantially more evidence than is presently in the record and is not well-suited to an ancillary contempt proceeding. For example, whether the Thor Easement in fact conflicts with the terms of the River Heights PSA will require construction of the scope of amendment # 3, a determination of whether the Thor Easement falls within that scope, and, to the extent necessary, fact-finding as to the parties' intent. Similarly, whether Mr. Knight fulfilled his repair obligations under the River Heights and Fish Trap PSAs will require the Court to consider the scope of Mr. Knight's repair obligations, determine whether Mr. Knight addressed any defects he was obligated to repair, and engage in fact-finding as to Mr. Knight's compliance.

The Court reminds the parties that it has not rendered any ruling adjudicating the merits of these issues. In ruling on the parties' cross-motions for summary judgment, the Court concluded that amendment # 3 of the River Heights PSA was sufficiently definite to be enforceable as a matter of Georgia contract law. [Dkt. 78, at 19–21]. But in ruling on the present Motion, the Court makes no

findings or conclusions as to whether Mr. Knight's recording of the Thor Easement violates amendment # 3 of the River Heights PSA. The Court likewise makes no such findings or conclusions as to whether he failed to satisfy his repair obligations under the River Heights and Fish Trap PSAs.

The Court also finds that 7 IL properly preserved these issues and that Mr. Knight's obligations under the PSA, to the extent unfulfilled, survive the execution and delivery of the deed. Ordinarily, when a deed is delivered and accepted, the purchase and sale agreement merges into the deed and all antecedent agreements are superseded. E.g., Holmes v. Worthy, 159 Ga. App. 262, 266 (1981); Cullens v. Woodruff, 137 Ga. App. 262, 262–63 (1976); Jordan v. Flynt, 240 Ga. 359, 362 (1977) ("[T]he terms of the preliminary sales contract which are not included in the deed are considered as eliminated, abandoned or discarded."). However, "where delivery of the deed is intended only to be part performance, the remaining contractual acts survive the execution of the deed." San Joi, Inc. v. Peek, 140 Ga. App. 397, 399 (1976); see also C & G Candler, Inc. v. Ga. Power Co., 138 Ga. App. 279, 280 (1976) ("However, it is well settled that where a collateral agreement not mentioned in the deed is shown to exist and the facts of the transaction show the parties intend for the agreement to survive the execution and

delivery of the deed, merger does not occur."). Here, the parties' closing documents explicitly state the following:

> *Survival of Agreement.* As part of the consideration of this sale, the contract between the parties is by reference incorporated herein and made a part hereof. Only the terms and conditions contained therein that have not been completed by the closing, shall survive the closing and shall not merge upon delivery of the deed.

[Dkt. 156-4, at 28–29]. Thus, to the extent Mr. Knight's commissions (i.e., recording of the Thor Easement) or omissions (i.e., failure to repair) left obligations under the PSAs incomplete, those obligations survive the deed's delivery, and Mr. Knight's failure to perform remains actionable.

In sum, the Court concludes that 7 IL has failed to prove that Mr. Knight violated an order by clear and convincing evidence. The Court cannot hold Mr. Knight in contempt for any delays in inspection and closing because the relevant orders were not "clear and unambiguous" and "valid and lawful," or the violation was too minor to justify the exercise of contempt powers. Further, the Court cannot hold Mr. Knight in contempt for failing to conduct certain repairs or recording the Thor Easement because these issues were properly reserved under the Court's May 29, 2025 Order. As a result, these issues are best reserved for a separate proceeding based on breach of contract.

## CONCLUSION

For the foregoing reasons, Plaintiff 7 IL Properties, LLC's Motion for

Contempt [Dkt. 145] is **DENIED**.

**SO ORDERED** this 2nd day of September, 2025.

_____

**RICHARD W. STORY**
United States District Judge